Docket No. 100947.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

ELEMENTARY SCHOOL DISTRICT 159 *et al.*, Appellees, v. ROBERT E. SCHILLER, as Illinois State Superintendant of Education *et al.* (Howard G. Ohlhausen, Appellant).

*Opinion filed April 20, 2006.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, McMorrow, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

**OPINION**

Pursuant to section 7–2c of the School Code (105 ILCS 5/7–2c (West 1998)), defendant Howard G. Ohlhausen (Ohlhausen) petitioned the State Superintendent of Education to detach his parcel of vacant farmland property from the existing school districts associated with Rich Township and annex it to adjoining school districts associated with the Village of Frankfort. The issue before us is whether Ohlhausen's petitions comply with section 7–2c, and, if so, whether section 7–2c constitutes unconstitutional special legislation in violation of article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const.1970, art. IV, §13). The circuit court of Cook County found that the petition did not comply with section 7–2c and additionally found that section 7–2c constituted special legislation. For the reasons which follow, we reverse.

## BACKGROUND

Ohlhausen, as successor trustee of the Else S. Emoff Living Trust, owned a parcel of land on the southwest edge of Cook County, Illinois (hereinafter, the property). The record reveals that the property is 140 acres of vacant farmland, and had been located in an unincorporated area in Rich Township, Cook County. It is surrounded on the north, east, and south by similarly vacant farmland properties. The nearest development to the north and east in the towns of Matteson and Richton Park, Illinois, is several miles away. However, the west side of the property is bounded by Harlem Avenue, and immediately across Harlem Avenue is the Village of Frankfort, in Will County. Well-developed residential subdivisions known as Southwick and Prestwick border Harlem Avenue in Frankfort, and thus adjoin the property. A petition for annexation of the property was filed and pending with the Village of Frankfort as of August 17, 1997.

The property is located within Matteson Elementary School District 159 and Rich Township High School District 227. Students residing in Frankfort do not attend the Matteson and Richton Park schools. Instead, Frankfort's public high school students attend Lincoln Way Community High School District 210, while Frankfort's elementary students attend either

Frankfort School District 157-C , or another district serving Frankfort children.

The record contains a December 9, 1996, letter which demonstrates Ohlhauser's plans as to the property. In the letter, Ohlhausen states to a representative of District 157-C:

> "Central to our planning and the success of the project is that the parcel be annexed to Frankfort 157C School District; whose excellent reputation would help support the sale of the upscale community envisaged for the parcel. [The village Administrator of Frankfort] conveyed support for our project, and expressed his opinions that (a) the property was in the buffer zone between Frankfort and Richton Park, (b) that it was very close to the Frankfort schools, (c) and that it might already be within both the Frankfort Library District and the Frankfort Fire District. We believe the property currently falls within the Richton Park School District, and that the development of such a community so far from their schools, would materially limit its success and set it apart as an 'island' community."

Section 7–2c was offered by Senator Petka as an amendment to House Bill 574. According to the May 15, 1997, Senate debates, along with another matter dealing with the annexation of school districts, the bill "provides a mechanism for a small portion of vacant land to be annexed to a neighboring municipality; takes care of a local concern in Will County." 90th Ill. Gen. Assembly, Senate Proceedings, May 15, 1997, at 10 (statements of Senator Petka). The bill was to "solve a couple of school district issues *** also for a school district in Will County." 90th Ill. Gen. Assembly, Senate Proceedings, May 16, 1997, at 57-58 (statements of Senator Petka). On May 23, 1997, the legislature passed House Bill 574 as Public Act 90-459, which became effective on August 17, 1997.

Accordingly, the Act provides, in pertinent part:

> "Notwithstanding any other provision of this Code, any contiguous portion of an elementary school district may be detached from that district and annexed to an

adjoining elementary school district, and any contiguous portion of a high school district may be detached from that district and annexed to an adjoining high school district, upon a petition or petitions filed under this Section, when all of the following conditions are met with respect to each petition so filed:

    (1) The portion of the district to be so detached and annexed to an adjoining elementary or high school district consists of not more than 160 acres of vacant land that is located in an unincorporated area of a county of 2,000,000 or more inhabitants and, on the effective date of this amendatory Act of 1997, is contiguous to one municipality that is (i) wholly outside the elementary or high school district from which the vacant land is to be detached and (ii) located entirely within the territorial boundaries of the adjoining elementary or high school district to which the vacant land is to be annexed.

    (2) The equalized assessed valuation of the taxable property located in the portion of the district that is to be so detached and annexed to the adjoining elementary or high school district constitutes less than 1% of the equalized assessed valuation of the taxable property of the district from which it is to be detached.

    (3) The portion of the district to be so detached and annexed to the adjoining elementary or high school district is annexed to the contiguous municipality pursuant to a petition for annexation filed and pending with the annexing municipality upon the effective date of this amendatory Act." 105 ILCS 5/7–2c (West 1998).

The property was annexed to the Village of Frankfort on December 15, 1997. Thereafter, on June 2, 1998, Ohlhausen petitioned the State Superintendent of Education, pursuant to section 7–2c, to detach the property from the Cook County elementary and high school districts, and to annex the property to the adjacent Will County school districts. Ohlhausen filed

two petitions: one for the elementary school districts, and one for the high school districts.

The Superintendent, through his hearing officer, convened an administrative hearing on the Ohlhausen petitions on September 10, 1998. Much of the evidence relating to the specific requirements of section 7–2c was stipulated.

As to section 7–2c(1) of the Act, the evidence demonstrated that the property is vacant and less than 160 acres. On August 17, 1997, the effective date of the Act, the property was located in an unincorporated area in a county of 2 million or more inhabitants. On the date the petition was filed, June 2, 1998, the property had been incorporated into the Village of Frankfort. The property was contiguous to a municipality (Frankfort) located entirely outside the school districts from which it was to be detached. The Village of Frankfort was entirely within the high school district to which it was to be annexed, namely, high school District 210. Frankfort, however, is not entirely within elementary school district 157-C.

As to section 7–2c(2) of the Act, the evidence demonstrated that the equalized assessed valuation of the property was less than 1% of the equalized assessed valuation of the taxable property of Districts 159 and 227. District 159's financial loss if the property were transferred to the Frankfort school districts would be less than .02% of its tax base, while District 227's loss would be less than .0074% of its tax base.

As to section 7–2c(3) of the Act, the evidence demonstrated that the property was annexed to Frankfort, a municipality contiguous to the property, pursuant to an annexation petition filed and pending on the effective date of the Act.

The hearing officer found that there was "no question" that Ohlhausen complied with "each and every criteria" established under the Act. He rejected District 159 and District 227's argument that section 7–2c(1) required that the property be in "unincorporated" territory on the date the school petition was filed with the Superintendent. He also rejected their argument that Frankfort must be located entirely within both Lincoln-Way High School District 210 and Elementary School District 157-C as a misreading of section 7–2(c)(1)(ii). Moreover, the hearing

officer found, applying the "community of interest standard" for annexation and detachment cases (see *Board of Education of Golf School No. 67 v. Regional Board of School Trustees*, 89 Ill. 2d 392 (1982)), that the property's "future is tied" to Frankfort. He observed that the subject property is "physically isolated from any developed section of the Village of Richton Park. The only developed land near the Subject Property is the Prestwick and Southwick subdivisions in the Village of Frankfort." He observed that "all municipal services for the site will be provided by the Village of Frankfort," and also library service was already provided by Frankfort prior to the annexation. He found that the Village of Frankfort, District 157-C and District 210 are the "natural community for any possible future inhabitants of the Subject Property." Accordingly, the hearing officer recommended that the Superintendent grant Ohlhausen's petitions.

The hearing officer additionally noted that he believed section 7–2c was unconstitutional special legislation, but lacked jurisdiction to make such a holding. The hearing officer concluded that the petitioner satisfied all the conditions for transfer of the property established under section 7–2c of the School Code. He recommended that the State Superintendent grant the petitions and order the property be detached from school District 159 and annexed to school district No. 157-C. He further recommended that the property be detached from District 227 and annexed to Lincoln Way Community High School District No. 210. The State Superintendent adopted the findings of the hearing officer, and ordered the property detached from the existing elementary and high school districts and annexed to the adjoining elementary and high school districts associated with the Village of Frankfort.

Elementary School District 159,[1] Rich Township High School District 227, Frankfort Community Consolidated School District 157-C, Lincoln Way Community High School District 210 and Sonya Norwood, a resident of the Matteson and Rich Districts, filed a four-count complaint in the circuit court of Cook

---

[1]The district's proper name is Matteson School District 159.

County against Howard G. Ohlhausen and Robert E. Schiller, Superintendent of Education. The first count sought administrative review, alleging that the hearing officer's decision and Superintendent Schiller's adoption of the decision were "arbitrary, capricious and legally erroneous." Plaintiffs also sought declaratory relief, arguing that section 7–2c of the School Code was unconstitutional special legislation (count II), violated Title VI of the Civil Rights Act (42 U.S.C. §2000d (2000)) (count III), and violated the equal protection clause of the United States Constitution (count IV).

The circuit court first discussed the elementary school petition's compliance with section 7–2c. He rejected plaintiffs' argument that the Act, section 7–2c(1), required that the property be in "unincorporated" territory on the date the school petition was filed with the Superintendent. The circuit court next considered whether the Act required that the Village of Frankfort be located entirely within school district 157-C. It found that the first paragraph of section 7–2c contemplated:

> "elementary-to-elementary and high-school-to-high-school, not 'mix and match.' *** The repeated 'or' in § 7–2c(1) does not suggest that if the requirements are met as to one situation, they may then be ignored as to the other. Rather, the 'or,' like the beginning of §7–2c as a whole, simply recognizes that two situations exist, each having parallel requirements. Thus, the clear and sensible reading of §7–2c(1) is that the subject property in an *elementary school* petition must be contiguous to a municipality that is (i) wholly outside the *elementary school* district from which the land is to be detached and (*ii*) wholly within the territorial boundaries of the adjoining *elementary* school district to which the land is to be annexed. It is undisputed that the Village of Frankfort was *not* located entirely within the adjoining elementary school district. The requirements of § 7–2c(1) were not met." (Emphases in original.)

The circuit court therefore found that the Superintendent's ruling was clearly erroneous because the Village of Frankfort was not entirely located within elementary school district 157-C.

The circuit court then addressed the special legislation claim. It first found that Sonya Norwood and the receiving school districts, Frankfort and Lincoln-Way, did not suffer any cognizable injury, and therefore did not have standing. Because no fundamental right or suspect classification was raised, the court applied the rational basis test, citing *Puffer-Hefty School District No. 69 v. Du Page Regional Board of School Trustees*, 339 Ill. App. 3d 194 (2003) (under the rational basis test, a statute is constitutional if the legislative classification is rationally related to a legitimate state purpose, and if any set of facts can be reasonably conceived to justify the classification). As to the 160-acre limit, the court stated, "a rational legislature might conclude, however, that detaching territory larger than 160 acres would be too disrupting to students or school districts." The limit to vacant and unincorporated land was rational because it "could have been added to ensure that the detachment does not instantly cripple the resources of the district from which the land is to be detached." As to the 2 million or more inhabitants requirement, which applies to only Cook County, the circuit court found that the argument failed because "plaintiffs have neither made nor offered any showing that other counties are somehow injured by their omission from § 7–2c(1)'s criteria."

The circuit court found, however, that section 7–2c(3) was unconstitutional due to the "effective date" limitation found therein. The court stated:

> "As plaintiffs forcefully point out, by its own terms (*see* §7–2c(3)), §7–2c actually became obsolete on its own effective date. That date–the simultaneous birth and death of the Section, so to speak–was whenever the Governor signed it, a matter of timing the General Assembly could neither predict nor control, and which could have been a single day after passage. And as soon as the effective date had arrived, no one could use the Section who did not *already* have an annexation petition 'filed and pending' (§7–2c(3))–a limitation which, together with the Section's other restrictive criteria, was manifestly calculated to fit Ohlhausen and no one else. Thus, plaintiffs argue, §7–2c was obviously, and

impermissibly, designed to flicker in and out of existence for Ohlhausen's sole benefit." (Emphasis in original.)

The court continued:

"Ohlhausen responds that the legislature really created a three-month window between the passage of the Act (May 23, 1997) and its actual effective date (August 17, 1997), thus enabling interested landowners to file petitions for municipal annexation during that time period. It is true that the legislature can grant a privilege for a limited period of time. [Citation.] But that is not this case. Here the legislature did not provide for a three-month, or indeed for *any*, window. The Governor could have signed P.A. 90–459 (the Act adding §7–2c) the day after its passage, thus visibly and irrefragably limiting it to Ohlhausen's 160 acres. It was pure happenstance that the Governor did not sign the Act until August 17, 1997. This Court cannot conceive of any rational basis on which the legislature could thus leave the statute's entire effective life to sheer chance, except for the inevitable conclusion that § 7–2c was enacted for Ohlhausen and no one else." (Emphasis in original.)

Therefore, the court reversed Superintendent Schiller's order and set aside both Ohlhausen's elementary school petition and Ohlhausen's high school petition. The circuit court dismissed counts III and IV as well, neither of which are at issue in this appeal. Because the judgment declared a statute of this state constitutionally invalid, appeal was taken directly to this court pursuant to Supreme Court Rule 302(a) (134 Ill.2d R. 302(a)).

## ANALYSIS

### I. Compliance with Section 7–2c

The first issue here is whether the Superintendent correctly determined that Ohlhausen's elementary school petition complied with section 7–2c. The State Superintendent's decision is subject to review under the Administrative Review Law. 105 ILCS 5/7–2c (West 1998); 735 ILCS 5/3–101 *et seq.* (West 2002).

The Administrative Review Law provides that judicial review of an administrative agency decision "shall extend to all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3–110 (West 2002). The standard of review, " 'which determines the degree of deference given to the agency's decision,' " turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005), quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). An agency's conclusion on a question of law is reviewed *de novo*. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 471. A reviewing court is not bound by an agency's interpretation of a statute, but the agency's interpretation remains relevant where there is a reasonable debate about the meaning of the statute. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 471.

A mixed question of law and fact asks the legal effect of a given set of facts. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 472. That is, in resolving a mixed question of law and fact, a reviewing court must determine whether established facts satisfy applicable legal rules. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 472; *AFM Messenger*, 198 Ill. 2d at 391, quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982). An agency's conclusion on a mixed question of law and fact is reviewed for clear error. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 472; *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Such review is significantly deferential to an agency's experience in construing and applying the statutes that it administers. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 472; *AFM Messenger*, 198 Ill. 2d at 393-94. Thus, " 'when the decision of an administrative agency presents a mixed question of law and fact, the agency decision will be deemed "clearly erroneous" only where the reviewing court, on the entire record, is "left with the definite and firm conviction that a mistake has been committed." ' " *Comprehensive Community*

*Solutions, Inc.*, 216 Ill. 2d at 472, quoting *AFM Messenger*, 198 Ill. 2d at 395.

The central issue here involves the Superintendent's decision to uphold the hearing officer's decision to grant Ohlhausen's elementary school petition.[2] In reviewing the hearing officer's decision to grant the petition, the Superintendent must determine, in part, whether the proposal was in compliance with the Act, including the requirements listed in section 7–2c. There is no dispute as to the basic facts; rather, the parties dispute the interpretation of the statutory provision that the Village of Frankfort be "located entirely within the territorial boundaries of the adjoining elementary or high school district to which the vacant land is to be annexed." 105 ILCS 5/7–2c(1)(ii) (West 1998). Before we can decide whether the Superintendent's decision that Ohlhausen's petition satisfied this requirement was clearly erroneous, we must first decide the plain meaning of section 7–2c. On this question, our standard of review is *de novo*.

The fundamental rule of statutory interpretation is to ascertain and effectuate the legislature's intent. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 473. The plain language of a statute remains the best indication of

---

[2]Plaintiffs failed to raise the "unincorporated" issue in their response brief. The first time this issue was argued before this court was at oral argument. They argued that section 7–2c required the property to have been in unincorporated territory at the time of filing the petitions for boundary change with the Superintendent. Ohlhausen responded at oral argument that the Act requires the property be unincorporated on the effective date of the Act. Because plaintiffs did not raise this issue in their brief before this court, the issue is forfeited. 188 Ill. 2d Rs. 341(e)(7), (f).

this intent. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 473. Where the language of a statute is clear, we may not read into it exceptions that the legislature did not express, and we will give it effect as written. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 473-74. We also will give undefined statutory terms their ordinary meanings. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 473. The parties agree that the plain language of section 7–2c of the School Code is unambiguous, but they offer different readings of the section.

Ohlhausen argues that the circuit court erred in reversing the Superintendent's ruling that Ohlhausen complied with the requirements of section 7–2c(1)(ii). The Village of Frankfort is located entirely within *at least* one district to which the property was to be annexed, namely, the high school district, District 210. The Act is not split into subparts which require the application of each subpart to separate petitions. Section 7–2c(1)(ii) is phrased in the disjunctive. It plainly provides for a single requirement that the municipality to which the subject property is annexed be located within the boundaries of the adjoining elementary *or* high school district. The word "or" means that a petition must satisfy at least one of two conditions, but not necessarily both. Frankfort is located entirely within the high school district. Thus, the Superintendent properly found that Ohlhausen satisfied the requirements of §7–2c(1)(ii).

Plaintiffs' arguments echo the ruling of the circuit court. They emphasize that the Act as a whole contains a parallel construction in that the Village of Frankfort must be entirely within the boundaries of District 157-C. The first paragraph of section 7–2c contemplates separate elementary petitions and high school petitions, and the legislature intended for this parallel construction to remain throughout the Act. Thus, plaintiffs argue, the Superintendent misread the phrase in section 7–2c(1)(ii) that "the territorial boundaries of the adjoining elementary or high school district to which the vacant land is to be annexed" by claiming that the word "or" actually means "either or" so that the municipality can be within either an elementary school *or* a high school district. Thus,

Ohlhausen's elementary petition thus did not meet the requirements of section 7–2c(1)(ii). We agree with Ohlhausen.

The word "or" is disjunctive. As used in its ordinary sense, the word "or" marks an alternative indicating the various parts of the sentence which it connects are to be taken separately. *People v. Frieberg*, 147 Ill. 2d 326 (1992). In other words, "or" means "or." *People v. Herron*, 215 Ill. 2d 167, 191 n.3 (2005), citing Webster's Third New International Dictionary 1585 (1993). Disjunctive therefore connotes two different alternatives. With this in mind, we set out again the disputed statutory section,

> "Notwithstanding any other provision of this Code, any contiguous portion of an elementary school district may be detached from that district and annexed to an adjoining elementary school district, and any contiguous portion of a high school district may be detached from that district and annexed to an adjoining high school district, upon a petition or petitions filed under this Section, when all of the following conditions are met with respect to each petition so filed:
>
> > (1) The portion of the district to be so detached and annexed to an adjoining elementary or high school district consists of not more than 160 acres of vacant land that is located in an unincorporated area of a county of 2,000,000 or more inhabitants and, on the effective date of this amendatory Act of 1997, is contiguous to one municipality that is (i) wholly outside the elementary or high school district from which the vacant land is to be detached and (ii) located entirely within the territorial boundaries of the adjoining elementary or high school district to which the vacant land is to be annexed." 105 ILCS 5/7–2c(1) (West 1998).

Accordingly, we consider whether Ohlhausen's elementary petition fulfilled the conditions provided by the plain meaning of the Act.

The first paragraph of section 7–2c begins by stating that districts, both elementary and high school, may be changed

upon a petition or petitions. Next, the paragraph requires that "all of the following conditions are met with respect to *each petition*." (Emphasis added.) 105 ILCS 5/7–2c (West 1998). Thus, the first paragraph creates a distinction between the petitions and the conditions. Stated another way, the Act requires that "each petition," whether elementary or high school, meet the "all of the following conditions" of the remainder of section 7–2c. Thus, while there may be separate *petitions*, there is nothing within the plain meaning of the first paragraph of the Act requiring the elementary and high school petitions meet separate *conditions*. Because plaintiffs' parallel construction would require elementary and high school petitions to meet separate, rather than "all of the following conditions," it contravenes the plain meaning of the Act. Accordingly, we reject plaintiffs' argument that the first paragraph of the Act sets forth a parallel construction, requiring separate conditions to be met for elementary and high school petitions.

We next examine whether the elementary petition has met those "following conditions" according to the alternatives further provided. We separate the statutory provision at hand into two sentences according to the alternatives presented by the disputed "condition" provided in section 7–2c(1)(ii). Therefore, deleting reference to high school petitions and focusing on subsection (ii), the two alternatives are contained in the following two paragraphs.

First, "any contiguous portion of an elementary school district may be detached from that district and annexed to an adjoining elementary school district *** upon a petition or petitions filed under this Section, when all of the following conditions are met with respect to each petition so filed: (1) [t]he portion of the district to be so detached and annexed to an adjoining elementary *** district *** is contiguous to one municipality that is *** (ii) located entirely within the territorial boundaries of the adjoining elementary *** district to which the vacant land is to be annexed." 105 ILCS 5/7–2c(1) (West 1998). The elementary petition clearly fails under this first alternative because the Village of Frankfort is not entirely within the boundaries of district 157-C.

˘14˘

Second, "any contiguous portion of an elementary school district may be detached from that district and annexed to an adjoining elementary school district *** upon a petition or petitions filed under this Section, when all of the following conditions are met with respect to each petition so filed: (1) [t]he portion of the district to be so detached and annexed to an adjoining elementary *** district *** (ii) is contiguous to one municipality that is *** located entirely within the adjoining *** high school district to which the vacant land is to be annexed." 105 ILCS 5/7–2c(1) (West 1998). The Village of Frankfort is entirely within Lincoln Way High School District 210. Therefore, the elementary petition satisfies the second alternative because it meets the disputed "condition" in section 7–2c(1)(ii).

To read the Act otherwise would negate the disjunctive meaning of the word "or" in the condition provided in section 7–2c(1)(ii), and thus require the municipality to be within both the elementary district *and* the high school district. Because the word "or" is ordinarily used in the disjunctive tense, each petition had to only meet one of the alternatives in section 7–2c(1)(ii), namely, the Village had to be located entirely with the elementary school district *or* the high school district.

There is no further dispute that the Village of Frankfort was located entirely within high school district 210. We find that the Superintendent correctly interpreted the Act and found that the petition met the requirements of the Act. We therefore hold that the Superintendent's decision was not clearly erroneous. Accordingly, we reverse the circuit court on this issue.

## II. Special Legislation Challenge

We next turn to the argument that section 7–2c constitutes special legislation. In general, statutes carry a strong presumption of constitutionality. *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315, 324 (2005); *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117, 122-23 (1995). This presumption requires that plaintiffs, as the parties challenging the statute in this case, bear the burden of establishing the statute's constitutional infirmity. *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 234 (2005); *Village*

*of Vernon Hills*, 168 Ill. 2d at 123. This court has a duty to uphold the constitutionality of a statute if it is reasonably possible to do so. *Big Sky*, 217 Ill. 2d at 234. We review *de novo* the circuit court's determination of section 7–2c's constitutionality, and its consequent order reversing and setting aside Superintendent Schiller's order. *Big Sky*, 217 Ill. 2d at 234.

Section 13 of article IV of the Illinois Constitution provides:

> "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const.1970, art. IV, §13.

The special legislation clause prohibits the General Assembly from conferring a special benefit or privilege upon one person or group and excluding others that are similarly situated. *Big Sky*, 217 Ill. 2d at 235; *Village of Vernon Hills*, 168 Ill. 2d at 122. While the legislature has broad discretion to make statutory classifications, the special legislation clause prevents it from making classifications that arbitrarily discriminate in favor of a select group without a sound and reasonable basis. *Big Sky*, 217 Ill. 2d at 235; *Village of Vernon Hills*, 168 Ill. 2d at 122. Our inquiry into special legislation issues is twofold. We must determine whether the statutory classification at issue discriminates in favor of a select group and, if so, whether the classification is arbitrary. *Big Sky*, 217 Ill. 2d at 235.

Plaintiffs argue here that section 7–2c(3) cannot pass special legislation scrutiny because the narrow window created by the effective date makes Ohlhausen the only beneficiary of the provision. Ohlhausen responds that the clear flaw in plaintiffs' case and the circuit court's judgment is that there was no "similarly situated group" who sought detachment or annexation of some other piece of property but was prevented from doing so by the language of section 7–2c.

We first determine if section 7–2c conferred a special benefit or privilege upon one person or group and excluded others that are similarly situated. We agree with the circuit court that there is significant evidence in the record that this

piece of legislation was solely intended to benefit Ohlhausen. Especially with regard to the portion requiring a petition to annex to be filed on the effective date of the Act, it is reasonable to assume that Ohlhausen is the only one who has benefitted from this provision.

However, legislation is not constitutionally infirm under the special legislation clause merely because of its unique application to the property at issue. The mere fact that a law may affect only a single entity does not render the law invalid under the special legislation clause. See, *e.g.*, *Big Sky*, 217 Ill. 2d 221 (statute affecting only Illinois Bell upheld against special legislation challenge); *Crusius*, 216 Ill. 2d 315 (statute affecting single river boat gambling licensee upheld against special legislation challenge); *Chicago National League Ball Club*, *Inc. v. Thompson*, 108 Ill. 2d 357 (1985) (rejecting constitutional challenge to validity of laws that affected only Wrigley Field). For instance, in *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315 (2005), the plaintiff sued the State of Illinois and the Illinois Gaming Board challenging as unconstitutional section 11.2(a) of the Riverboat Gambling Act (230 ILCS 10/11.2(a) (West 2000)). That provision provided that a gambling licensee not conducting riverboat gambling on January 1, 1998, could apply to the Board for a license renewal and could secure approval to relocate the business upon receiving approval from the new municipality in which the licensee sought to relocate. *Crusius*, 216 Ill. 2d at 320. We found it "clear" not only that the challenged provision discriminated in favor of a select group, but that the statute was intended to benefit one specific gambling licensee, Emerald Casino, Inc. *Crusius*, 216 Ill. 2d at 326. Nevertheless, we rejected the special legislation challenge because the classification was rationally related to a legitimate state interest.

To contravene article IV, section 13, of our constitution, the statute must confer on a person, entity, or class of persons or entities a special benefit or exclusive privilege that is denied to others who are similarly situated. Thus, under the first part of the inquiry, we determine if another entity similarly situated to Ohlhausen was denied a privilege. This burden has been met in previous cases through evidence of other entities that would

have been able to benefit from the legislative privilege, but for some limiting exclusionary provision. For instance, in *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117 (1995), the legislature created a mechanism whereby a non-home-rule municipality with more than one fire protection district may transfer territory served by one district into another district. The Village of Vernon Hills petitioned to transfer territory to the Countryside Fire Protection District. The Vernon Fire Protection District filed an objection to the petition stating that the law was special legislation in that it was restricted to non-home-rule municipalities in a county with a population between 500,000 and 750,000. Lake County was the only Illinois county at the time with this population. We noted, "[t]hrough all the exhibits, Vernon Fire showed that municipalities located in Du Page County are similarly situated to the Village, but cannot utilize [the mechanism] because Du Page County has a population of over 750,000 persons." *Village of Vernon Hills*, 168 Ill. 2d at 121, 129-30. This court struck down the legislation as there was no rational basis to distinguish between the different districts based on the population requirement. *Village of Vernon Hills*, 168 Ill. 2d at 130.

Conversely, in *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221 (2005), the legislative section at issue (220 ILCS 5/13–502.5 (West 2002)) terminated administrative proceedings against Illinois Bell and declared that certain of its services would be classified as "competitive," enabling Illinois Bell to increase rates for its services. The section also required Illinois Bell to expend $120 million in refunds and other payments. This court found,

> "[T]he advantages received by Illinois Bell were not denied to others who were similarly situated. They could not have been, for there were no other telecommunications carriers whose situation was similar to Illinois Bell's. ***
>
> If any telecommunications carrier believed that section 13–502.5 afforded Illinois Bell an advantage it was denied, there is no evidence of it in the record before us." *Big Sky*, 217 Ill. 2d at 236-37.

˘18˘

We stated that because no other carrier was shown to be similarly situated to Illinois Bell, section 13–502.5 cannot be said to have discriminated in favor of a select group. After finding that the legislature had a rational basis for the classification, we found that plaintiffs had failed to meet their burden of clearly establishing that the statute violated the prohibition against special legislation. *Big Sky*, 217 Ill. 2d at 240.

Like the plaintiffs in *Big Sky*, plaintiffs here have failed to overcome the strong presumption of constitutionality of section 7–2c with evidence that Ohlhausen's privilege was denied to any other similarly situated entity. Notably, plaintiffs do not claim that they are similarly situated to Ohlhausen. Instead, plaintiffs provide a conclusory argument that this statute prevented "any other property owner who meets all of the other conditions from effectuating a school boundary change, merely because he or she did not have a petition on file on the effective date of section 7–2c." At best, plaintiffs point to the property owners to the north and south of Ohlhausen who had similarly vacant farmland with an area of under 160 acres. However, the mere fact that this property exists is not enough to satisfy plaintiffs' burden without any additional evidence that those unnamed property owners could have benefitted from section 7–2c but for the effective-date limitation. No evidence is in the record that these owners sought to convert their farmland into residential areas, desired the Village of Frankfort to annex their property, or additionally sought a school district boundary change. There is no evidence in the record of anyone similarly situated to Ohlhausen, *i.e.*, any other property owner who sought a boundary change under similar circumstances. Thus, plaintiffs have not met their burden under the first part of the twofold inquiry.

The holding that plaintiffs failed in their burden is borne out by each case cited by plaintiffs. In each of those cases, the similarly situated entities or class of persons which was denied a benefit was clearly identified. See *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357 (1985) (plaintiff Chicago Cubs challenged the validity of laws preventing them from staging nighttime baseball games); *In re Belmont Fire*

*Protection District*, 111 Ill. 2d 373 (1986) (evidence demonstrated that certain municipalities that could have benefitted from the transfer of fire districts were denied benefit of law by population classification); *County of Bureau v. Thompson*, 139 Ill. 2d 323 (1990) (law imposed upon plaintiffs, certain local governmental entities, the obligation of maintaining some 50 bridges that pass over the Illinois and Mississippi Canal); *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997) (severely injured plaintiffs were deprived of right to collect their full compensatory damages from the tortfeasor); *In re Estate of Jolliff*, 199 Ill. 2d 510 (2002) (only immediate family members who were caregivers of disabled persons were entitled to make statutory custodial estate claims, while all other classes of caregivers were excluded). Here, neither plaintiffs themselves nor any other entities have been excluded from a benefit received by Ohlhausen.

Article IV, section 13, of our constitution (Ill. Const.1970, art. IV, §13) only prohibits passage of a special or local law when "a general law is or can be made applicable." Nothing in that provision bars the legislature from enacting a law specifically addressing the conditions of an entity that is uniquely situated. *Big Sky*, 217 Ill. 2d at 237; *County of Bureau v. Thompson*, 139 Ill. 2d at 345-46. Because no other landowner was shown to be similarly situated to Ohlhausen, section 7–2c cannot be said to have discriminated in favor of a select group. This stands as a sufficient basis to uphold the constitutionality of the Act. We therefore find that plaintiffs have not met their burden in demonstrating a violation of the special legislation clause.

We do add, however, that even if section 7–2c discriminated in favor of Ohlhausen, to the demonstrated exclusion of another property owner, plaintiffs' claim would still fail. The second part of the twofold inquiry examines whether the legislative classification is arbitrary. *Big Sky*, 217 Ill. 2d at 237; *Village of Vernon Hills*, 168 Ill. 2d at 122. In determining whether a statute violates this standard, courts generally apply the same standards applicable to challenges brought under the equal protection clause of our constitution (Ill. Const. 1970, art. I, §2). Where the statute under consideration does not affect a

fundamental right or involve a suspect classification, we review it under the deferential rational basis test. Under this test, the statute is constitutional if the classification it establishes is rationally related to a legitimate state interest. *Big Sky*, 217 Ill. 2d at 237-38; *Crusius*, 216 Ill. 2d at 325. If any set of facts can be reasonably conceived that justify distinguishing the class to which the statute applies from the class to which the statute is inapplicable, then the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may enact laws applicable only to those persons or objects. *Big Sky,* 217 Ill. 2d at 238; *Village of Vernon Hills*, 168 Ill. 2d at 122.

We first note that the legislature retains the power to abolish, dissolve, and change boundaries of school districts. 32A Ill. L. & Prac. *Schools* §39 (2004), citing *People ex rel. Dixon v. Community Unit School District No. 3*, 2 Ill. 2d 454, 465-66 (1954). We have previously stated that school districts established under enabling legislation are:

> "entirely subject to the will of the legislature thereafter. With or without the consent of the inhabitants of a school district, over their protests, even without notice or hearing, the State may take the school facilities in the district, without giving compensation therefor, and vest them in other districts or agencies. *** The area of the district may be contracted or expanded, it may be divided, united in whole or in part with another district, and the district may be abolished. All this at the will of the legislature." *People ex rel. Dixon*, 2 Ill. 2d at 465-66.

Here, the Act is far more modest than one creating, abolishing, or even contracting a school district. It merely authorizes the detachment and annexation of a small, vacant parcel of land representing a tiny fraction of a district's taxing revenues under certain closely defined circumstances. Moreover, the Superintendent adopted the findings of the hearing officer, who applied the "community of interest standard" for annexation and detachment cases (*Board of Education of Golf School District No. 67 v. Regional Board of School Trustees*, 89 Ill. 2d 392 (1982)), and found that the property's "future is tied" to Frankfort. The hearing officer observed that the subject

property is "physically isolated from any developed section of the Village of Richton Park. The only developed land near the Subject Property is the Prestwick and Southwick subdivisions in the Village of Frankfort." He observed that "all municipal services for the site will be provided by the Village of Frankfort," and also library service was already provided by Frankfort prior to the annexation. He found that the Village of Frankfort, District 157-C and District 210 are the "natural community for any possible future inhabitants of the Subject Property." It seems apparent, based on the hearing officer's finding regarding the "natural community" of the property alone, that the legislature could have determined that the future schoolchildren of this area would best be served by participation in the Frankfort school districts. Therefore, there is an adequate rational basis for the legislation.

Plaintiffs have not met their burden of overcoming the statute's constitutionality; therefore, we reverse the circuit court and affirm the judgment of the Superintendent of Education.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court and confirm the order of the Superintendent of Education.

*Circuit court judgment reversed;*
*Department order confirmed.*

.