FIRST DIVISION
MARCH 3, 2008

No. 1-06-1134

| | | |
|---|---|---|
| LUCILLE RUSSELL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF EDUCATION OF THE CITY OF | ) | |
| CHICAGO, MICHAEL W. SCOTT, NORMAN R. | ) | No. 05 CH 07651 |
| BOBINS, TARIQ H. BUTT, ALBERTO A. | ) | |
| CARRERO, JR., CLARE M. MUNANA, ROXANNE | ) | |
| WARD, RUFUS WILLIAMS, ARNE DUNCAN, | ) | |
| Chief Executive Officer, ROBERT PERKOVICH, and | ) | |
| ILLINOIS STATE BOARD OF EDUCATION, | ) | Honorable |
| | ) | Richard Billik, |
| Defendants-Appellees. | ) | Judge Presiding. |

### MODIFIED OPINION UPON DENIAL OF PETITION FOR REHEARING

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff Lucille Russell was discharged from her employment as a tenured teacher in the

Chicago Public Schools system following an administrative hearing under section 34-85 of the

School Code (105 ILCS 5/34-85 (West 2006)). A hearing officer found Russell engaged in conduct

that was irremediable and upheld the defendant Board of Education of the City of Chicago's (Board)

decision to terminate Russell's employment without prior written warning. The Board adopted the

findings of fact and conclusions of law of the hearing officer and terminated Russell. Plaintiff filed

a complaint in the circuit court of Cook County to review the decision of the Board. The circuit court affirmed the decision of the Board. We reverse.

BACKGROUND

Russell was a tenured special education teacher at the Curtis School, an elementary school on Chicago's south side. She had been teaching for approximately 22 years at the time of her discharge and had spent 20 years at the Curtis school.

Russell had been suspended from her teaching duties on numerous occasions. In 1992, the Board suspended Russell for unprofessional conduct and insubordination. She was again suspended in 1995 for, *inter alia*, failure to follow the directives of her superiors and disruptive conduct during class periods. The Board suspended Russell three times during the 1999 calendar year for various acts of insubordination and for failure to conform her conduct to the Chicago Public Schools Employee Discipline Code.

Russell repeatedly appealed her suspensions, claiming that the bases for these administrative actions were either unfounded or motivated by malice. The hearing officers in Russell's appeals upheld the decisions of the Board to suspend Russell. The hearing officers claimed that Russell's behavior warranted a suspension on each occasion. In 1999, the Board formally adopted a warning resolution (Warning) describing in detail 15 deficiencies in Russell's performance and recommending four directives for improvement. This Warning cautioned that failure to comply with the listed directives for improvement would result in Russell's termination for cause. The Board discharged Russell in 2000 for failure to conform to the demands of the Warning.

Russell requested a hearing to review the validity of the Board's actions shortly after she was terminated. An evidentiary hearing was held and the hearing officer, in his written decision, stated:

> "In my opinion the Target in this case, Ms[.] Russell, questioned various new policies or actions, she did not receive answers, if she didn't comply post haste with the Principal's demands she was slapped with insubordination charges. I belief [sic] she was baited, overwhelmed with disciplinary memos, [and] kept under suffocating surveillance to the detriment of her psychological as well as physical well being."

The hearing officer then ordered the Board to reinstate Russell and expunge all disciplinary memoranda from her file dating back to 1992. The Board did not appeal this ruling and expunged Russell's record by resolution.

The friction between Russell and the Board continued after her reinstatement. Russell perceived that other teachers physically and verbally accosted her, and she called the police to the school on several occasions to demand that they investigate the incidents and arrest her colleagues. The hearing officer found that Russell left her class unsupervised on at least one occasion. In one instance, Russell complained that another teacher had kicked her and asked her students if they had witnessed the event. Russell then requested that the students who claimed to have witnessed the incident write down what they saw, and she shared those accounts publicly.

As a result of this conduct, the Board ordered Russell to undergo a fitness for duty (FFD) evaluation with a psychologist. Section 4-54 of the rules of the Board of Education permits the

Board to require an employee to undergo a physical or mental evaluation if, in the opinion of the chief executive officer, that employee is unfit to perform her job. Failure to report for this examination is grounds for dismissal. Russell reported for her scheduled examination, and a clinical psychologist found her fit to return to work so long as she followed up with the psychologist and his recommendations within 30 days.

Russell called the examining psychologist within the 30-day period to follow up. The doctor, per a telephone interview, found that Russell could return to work without accommodations. In his discharge instructions, the psychologist referred Russell to her family physician for a medical evaluation.[1] Unsatisfied with this recommendation, Wendy Haas, an occupational nurse practitioner employed by the Board, directed Russell to undergo a second FFD evaluation. The Board does not now contend that it had grounds to request a second FFD examination independent of its initial concerns. Haas reasoned that the examining psychologist had erred in his recommendation that Russell return to work, and she did not agree with the fact that he followed up with Russell over the telephone. Russell, having complied with her obligation to undergo one FFD examination, refused to submit to further tests.

The Board then initiated termination proceedings against Russell. The Board cited Russell's insubordination in refusing to report for a second FFD examination and her repeated disciplinary

---

[1] While the psychologist checked the "Psychiatric Evaluation" referral box on Russell's discharge after his initial evaluation, he referred Russell to an outside physician only for "Medical Evaluation" after his follow-up examination. The referral notes on the two reports also clearly indicate his intent to refer Russell for further medical, not psychiatric, evaluation after his follow-up examination.

record dating back to 1992 as grounds for the hearing officer to find that her conduct was irremediable. While the Board referenced the 1999 Warning, the Board issued no new warning prior to initiating these proceedings. A new hearing officer concluded (1) that Russell's conduct "did in fact imperil the students and staff at Curtis Elementary"; and (2) based on Russell's 1992 and 1995 disciplinary record and her actions subsequent to her first dismissal, that a warning would not have changed her conduct. As a result, the hearing officer found that Russell's conduct was irremediable and did not require a warning prior to termination.

The Board, by resolution, adopted the hearing officer's findings of fact and conclusions of law on March 23, 2005. The Board notified Russell of its final decision to terminate her employment in a letter dated March 25, 2005. While the Board attached a blank certificate of mailing to its final decision, this certificate was not completed to show the date of mailing. The Board claims that it notified Russell via certified mail in addition to general mail; however, the Board has not produced a return receipt to prove the date of mailing or date of receipt. Finally, the Board claims it personally served Russell with its decision, but the record does not contain an affidavit of service to show when, if at all, she was served with the decision.

Russell asks this court to reverse the Board on the grounds that: (1) the Board's use of an expunged warning to charge Russell in a second dismissal proceeding was improper; (2) the admission of expunged disciplinary records was also improper, unfair and prejudicial; (3) the hearing officer's finding that Russell violated a Board rule concerning FFD evaluations was against the manifest weight of the evidence[2]; and (4) Russell's actions were not irremediable. The Board

---

[2]The hearing officer never cited violation of Section 4-54 as an independent basis for his

5

No. 1-06-1134

claims that the hearing officer's decision was supported by sufficient evidence and should be affirmed. The Board further contends that Russell filed her petition for judicial review outside of the 35-day statutory period and asks this court to dismiss this appeal for want of jurisdiction. The Board did not raise its claimed jurisdictional defect before the trial court.

STANDARD OF REVIEW

Whether a court has jurisdiction is a question of law, and we review *de novo*. *Woods v. Cole*, 181 Ill. 2d 512 (1998).

We must defer to the Board's decision unless it was clearly erroneous. The Administrative Review Law limits our review of the substance of this case. 735 ILCS 5/3-101 et seq. (West 2004). We must hold that the findings and conclusions of the Board are *prima facie* true and correct. 735 ILCS 5/3-110 (West 2002). Our review is of the Board's decision, not the decision of the circuit court, *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. 3d 155, 162 (2006).

We review mixed questions of law and fact to determine whether the administrative agency's decision was clearly erroneous. *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130 (2006). " ' "[W]hen the decision of an administrative agency presents a mixed question of law and fact, the agency decision will be deemed 'clearly erroneous' only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " ' " *Schiller*, 221 Ill. 2d at 143, quoting *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 472 (2005).

conclusion that Russell should be dismissed, so we consider this issue only to the extent that it constitutes evidence of Russell's pattern of behavior.

6

Our statutory authority to review administrative decisions restrains us from supplementing an administrative agency's findings or conclusions. A reviewing court does not have the authority to modify an administrative agency's decision. *Adamek v. Civil Service Comm'n of City of Chicago*, 17 Ill. App. 2d 11, 20 (1958), citing *Brotherhood of R.R. Trainmen v. Elgin, Joliet & Eastern Ry. Co.*, 374 Ill. 60, 63 (1940); see also *Chicago & West Towns Rys., Inc. v. Illinois Commerce Comm'n*, 397 Ill. 460, 467 (1947) (" 'The statute [providing jurisdiction for judicial review] does not authorize a court to put itself in the place of the [administrative agency] and to determine independently the issues presented, ***' " quoting *Illinois Central R.R. Co. v. Franklin County*, 387 Ill. 301, 319 (1944)). Put simply, "the Administrative Review Law empowers a court of review to either affirm or reverse a board decision. No more than that." *Biscan v. Village of Melrose Park Board of Fire & Police Commissioners*, 277 Ill. App. 3d 844, 849 (1996) (dictum). Therefore, we must limit our review of the Board's decision to the findings and conclusions contained therein.

ANALYSIS

A. Timely Petition for Judicial Review

The Board argues that Russell is not entitled to judicial review because her complaint was untimely filed. A party is barred from obtaining judicial review unless it seeks that review according to the provisions of the Administrative Review Law (Review Law). (735 ILCS 5/3-102 (West 2002)). Under the Review Law, a party seeking review must file a complaint and issue summons within 35 days of service of a final decision by the administrative agency. 735 ILCS 5/3-103 (West 2002). A final decision mailed by general mail is served on the date that it is deposited

7

in the United States mail, and not on the date received. *Nudell v. Forest Preserve District*, 207 Ill. 2d 409 (2003). The Board urges us to find that Russell filed a petition for judicial review 38 days after it allegedly mailed its final decision and asks us to dismiss for lack of subject matter jurisdiction.

This court has never addressed the issue of statutory jurisdiction in a situation where the record does not reveal, and it cannot be determined, whether a plaintiff's petition for judicial review was timely filed. The circuit court does not have subject matter jurisdiction when a party files a petition for judicial review more than 35 days after service of an administrative agency's final decision. *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 356 (2006). Neither party may waive the issue of subject matter jurisdiction. *Currie v. Lao*, 148 Ill. 2d 151 (1992).

In the instant case, the Board's failure to show any form of service on the plaintiff prevents us from determining when the plaintiff was served with the Board's decision. The Board controlled the method and manner of service. The cover letter to its final decision is dated March 25, 2005, yet the record does not contain a mailing affidavit, an affidavit of service, or a certified mail return receipt. In addition, the Board did not raise any jurisdictional issues in the trial court.

Under the facts of this case, an administrative agency must bear the burden of establishing that a petition for judicial review under the Administrative Review Law was filed more than 35 days from the date it served its final decision. We look to *Rodriguez* for guidance as to which party must demonstrate the date of service of an agency's final decision. In *Rodriguez*, the Illinois Supreme Court noted the truism that the plaintiff in that case could not allege "facts to establish any knowledge of plaintiff with respect to the commission's mailing practices" when the defendant

8

commission was the party to place its final decision in the mail. *Rodriguez*, 218 Ill. 2d at 346 n.1. In the instant case, Russell could not have drafted an affidavit of mailing on personal knowledge of the Board's mailing practices to establish that her petition was timely filed. The administrative agency is the only party that can swear in an affidavit that it placed the final decision in the United States mails on a certain date. Thus, we must rely on the Board to provide us with proof of the date of service.

The Board had three opportunities to prove that Russell's petition was untimely. It availed itself of none. The Board drafted a blank certificate of mailing at the bottom of its decision, which could have sufficed as proof that the statutory period had run, but the certificate was never filled out or signed. The Board's decision also states that it was sent via certified mail and delivered via personal service, yet a return receipt was never made part of the record in either the trial court or this court. Finally, the Board has not provided this court with an affidavit of service. The Board cannot claim that Russell filed an untimely petition for judicial review when it has failed to demonstrate in any manner that the petition was untimely by proving when it mailed or personally served the decision.

We refer the parties to *Rodriguez*, 218 Ill. 2d at 346, for one example of a proper procedure to demonstrate that a petition under the Administrative Review Law is untimely. In that case, the administrative agency provided the court a sworn affidavit that it mailed its final decision on a date that would make petitioner's complaint untimely. The agency supplemented the affidavit with a postal receipt showing that the decision was mailed to the defendant, at her address, on the date stated in the affidavit. The administrative agency properly documented the date of service and

9

provided the court with clear evidence that the petitioner's complaint was filed outside the 35-day statutory period for administrative review actions. No such information is before this court.

### B. Validity of the Board's Decision

Russell contends that the finding that her conduct was irremediable was clearly erroneous as a result of the hearing officer improperly considering evidence of expunged disciplinary records in making his finding that a warning would not have cured Russell's conduct. We agree.

A tenured teacher shall not be discharged unless he or she is "given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges." 105 ILCS 5/34-85 (West 2006). A tenured teacher may be discharged without warning only if his or her conduct is deemed irremediable. 105 ILCS 5/34-85 (West 2006). Likewise, "[n]o written warning shall be required for conduct on the part of a teacher *** which is cruel, immoral, negligent, or criminal or which in any way causes psychological or physical harm or injury to a student as that conduct is deemed to be irremediable." 105 ILCS 5/34-85 (West 2006).

We must first determine whether to review the decision of the Board or the decision of the hearing officer for error. We have previously ruled that our review is of the hearing officer and not of the Board. *Board of Education of the City of Chicago v. Harris*, 218 Ill. App. 3d 1017, 1023 (1991). This rule is in accord with the established will of the legislature.[3] 105 ILCS 5/34-85b (West

---

[3]Subsequent to our initial decision in this case, but before this modified opinion on denial of rehearing, the legislature modified the text of the removal provisions of the School Code. Rb - Act 95—510, eff. Aug. 28, 2007. In relevant part, the legislature struck the provisions requiring us to review the decision of the hearing officer and replaced them with text requiring

2006) (judicial review is of the "final administrative decisions of the hearing officer"). However, apparently deferring to the general scheme over the specific and unambiguous words in the statute, this court has interpreted "hearing officer" to refer to the Board of Education. *Hearne v. Chicago School Reform Board of Trustees of the Board of Education for the City of Chicago*, 322 Ill. App. 3d 467 (2001). Thus, we must review the decision of the Board.

In the instant case, the Board adopted the decision of the hearing officer in full. The Board resolved:

> "After considering the hearing officer's findings of fact, conclusions of law, and recommendation, and after a thorough review of the entire record of the dismissal hearing, the Board of Education of the City of Chicago adopts the findings of fact and conclusions of law and accepts the recommendation of the hearing officer."

This resolution formed the sole basis for Russell's dismissal. In the case at bar, the Board's decision is a mere proxy for that of the hearing officer; therefore, we must review the opinion of the hearing officer for error.

The hearing officer concluded that the Board did not provide Russell proper warning before terminating her employment. When a teacher is discharged without warning, the evidence must show that her conduct was irremediable. 105 ILCS 5/34-85 (West 2006)*; Harris*, 218 Ill. App. 3d at 1022.

---

us to review the "final administrative decisions of the board . . . ." Rb. Act. 95—510, eff. August 28, 2007 (modifying 105 ILCS 5/34—85, 34—85b).

The hearing officer's opinion listed the Board's allegations of Russell's misconduct and concluded: "The Petitioner [Board] has proven that Respondent engaged in misconduct that was irremediable and could not have been corrected had notice been given and remedial efforts been undertaken." The Board adopted the hearing officer's conclusion that Russell's conduct was irremediable, and therefore found that it was justified in terminating Russell without warning.

The Board contends that it did not err in terminating Russell's employment for three reasons: (1) Russell attempted to cause her teaching assistant to give a false statement to police, which is immoral conduct and therefore irremediable *per se* under the law; (2) Russell's attempts to enlist her students as witnesses to an alleged altercation between her and another teacher caused psychological or physical harm or injury to those students, which is also irremediable *per se*; and (3) the Board was aware that it could not use Russell's expunged disciplinary record in making its finding that her conduct was irremediable, so it was not error to terminate on the strength of its independent classification of her conduct as irremediable.[4]

A careful review of the hearing officer's decision reveals that he did not hold any of Russell's specific actions to be irremediable *per se*. The hearing officer stated that he examined the evidence under the standard "that teacher misconduct is irremediable and warrants dismissal without notice and corrective action if it presents a danger to students, facility or the school and if so, whether the conduct could be corrected if notice had been given." The hearing officer did not mention the term "irremediable *per se*" in his ruling.

---

[4] The Board includes the additional claim that Russell's actions were negligent, and therefore irremediable *per se*, in its petition for rehearing.

If a teacher's conduct is not irremediable *per se*, a two-part test must be utilized to determine whether a teacher's conduct is irremediable when examined over a period of time. There must be a determination of: (1) whether the teacher's actions have caused damage to the faculty, students or school; and (2) whether a warning would have corrected the teacher's behavior. *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622*, 67 Ill. 2d 143, 153 (1977). Instances of remediable transgression may become irremediable when examined in the aggregate. *Gilliland*, 67 Ill. 2d at 153. Therefore, assuming that Russell's conduct satisfied the first prong of the *Gilliland* test, the Board would not have needed to issue a warning prior to terminating Russell's employment if her repeated activities demonstrated that a warning would not have corrected her behavior.

The question of whether Russell's conduct was irremediable is a mixed question of law and fact. "[I]n resolving a mixed question of law and fact, a reviewing court must determine whether established facts satisfy applicable legal rules." *Schiller*, 221 Ill. 2d at 143. We reverse the finding of an administrative agency only when a mistake has been committed. *Schiller*, 221 Ill. 2d at 143. In the instant case, we must determine whether the Board, through its adoption of the hearing officer's decision, mistakenly applied its findings of fact to the legal criteria for irremediable actions.

The hearing officer undertook an analysis to determine whether Russell's behavior, examined in the aggregate, demonstrated that a warning would not have corrected the problem. The hearing officer concluded that Russell's conduct dating back to 1992 showed Russell's recalcitrant

attitude despite several formal and informal warnings to desist. The hearing officer concluded that Russell's conduct was irremediable based on this pattern of conduct.

The hearing officer erred in concluding Russell's conduct was irremediable when he based his decision in part on expunged disciplinary records. A different hearing officer in the initial termination proceeding against Russell ordered the Board to expunge Russell's records dating back to 1992. The Board admits it adopted the recommendation of the first hearing officer and expunged Russell's record. The hearing officer in the case at bar improperly considered this expunged evidence to the prejudice of Russell. Any decision that Russell's conduct was irremediable must be based only on her pos-reinstatement behavior, and it was not.

The hearing officer in the termination proceeding at issue reached the conclusion that the "litany of misconduct" in Russell's record demonstrated that a warning would not have corrected her behavior only after considering her expunged disciplinary records. We must assume the hearing officer, given his need to justify his decision on expunged records, did not believe Russell's postreinstatement conduct was itself sufficient to justify the conclusion that it was irremediable. The Board adopted the decision of the hearing officer, and therefore we can infer that the Board held Russell's postreinstatement conduct to be remediable. The evidence in the record supports this position. The hearing officer's error in considering Russell's expunged conduct record elevated Russell's conduct from remediable to irremediable. Therefore, the hearing officer's error affected his ultimate decision. Our review of the entire record leaves us with the conclusion that this was a clear mistake. Therefore, the hearing officer's holding that Russell's conduct was irremediable under *Gilliland* must be reversed.

14

The Board's argument that it did not consider expunged records is not persuasive. The Board claims that it knew Russell's records were not a proper foundation for a decision that her conduct was irremediable, and therefore its decision was based only on proper evidence. The Board's resolution to adopt in full the hearing officer's findings of fact and conclusions of law prevents us from considering this argument. The Board's decision was to adopt that of the hearing officer. Any mistake in the hearing officer's decision is therefore a mistake of the Board.

The Board contends in its petition for rehearing that the hearing officer did not cite to any expunged evidence when making his decision. The Board is correct that the hearing officer reviewed only Russell's postreinstatement conduct to render his ruling that Russell's actions caused damage to the faculty, students or school; however, the hearing officer concluded that a warning would not have corrected Russell's behavior based in part on her expunged disciplinary records, which was improper. The hearing officer stated:

"I find that the discipline issued by Petitioner [Board] to Respondent before 1999 is properly before me for the purposes of determining whether or not Respondent's misconduct in 2002–03 and in early school year 2003–04 was irremediable.

* * *

"[T]he record reflects *** that Respondent is no stranger to misconduct involving insubordination, failing to follow directives, and leaving classrooms and students unattended. Her misconduct of 2002–03 and the following school year is *of the same type* and thus leads me to believe that efforts at remediation would have been of no avail." (Emphasis added.)

The hearing officer considered Russell's expunged disciplinary records under the second

prong of the *Gilliland* test. While the hearing officer considered only Russell's postreinstatement conduct to find that her conduct caused injury to the students, faculty or school, he relied on expunged disciplinary records to establish that a warning would not have corrected her behavior. The hearing officer improperly considered this expunged evidence to the prejudice of Russell. Any decision that Russell's conduct was irremediable must be based only on her postreinstatement behavior.

After reversing the hearing officer's decision that Russell's conduct was irremediable under *Gilliland*, we are left with the fact that the hearing officer did not properly hold that Russell's conduct was irremediable under *Gilliland*, and that he did not hold that Russell's conduct was irremediable *per se*. Illinois law gives the Board power to dismiss a tenured teacher for cause, but only if the Board follows the procedures outlined in the law. Russell's status as a tenured teacher entitled her to written warning prior to any termination. 105 ILCS 5/34—85 (West 2006).

When the Board discharges a tenured teacher without prior written warning and fails to prove that her conduct was irremediable, "it is deprived of jurisdiction to seek dismissal of the teacher." *Harris*, 218 Ill. App. 3d at 1022. The Board did not give Russell prior written warning of her dismissal and did not prove that her conduct was irremediable. The Board therefore improperly dismissed Russell from its employ.

"[W]hen a teacher's removal for cause has been adjudicated upon review or appeal in favor of the teacher, the trial court 'shall order reinstatement and shall determine the amount for which the board is liable including but not limited to loss of income and costs incurred therein.' " *Grant v. Board of Education of the City of Chicago*, 282 Ill. App. 3d 1011, 1017 (1996), quoting Ill. Rev.

Stat. 1991, ch. 122, par. 34-85 (now 105 ILCS 5/34-85 (West 1994)). A tenured teacher who has been wrongfully discharged "is entitled to back pay as well as the restoration of all benefits, rights and privileges the teacher would have retained had [she] remained on the job." *Grant*, 282 Ill. App. 3d at 1017. The benefits to be awarded "include the restoration of sick days that should have accrued during the dismissal period." *Grant*, 282 Ill. App. 3d at 1017, citing *Board of Education, Springfield Public Schools, District No. 186 v. McCoy*, 123 Ill. App. 3d 1065 (1984). On remand, the trial court shall determine the Board's liability to Russell for terminating her without prior warning.

CONCLUSION

The Board of Education has failed to demonstrate that the plaintiff filed an untimely petition for judicial review. The Board erred when it considered Russell's expunged disciplinary records to determine that her conduct was irremediable. We must defer to the judgment of the Board that the postreinstatement disciplinary problems, considered without reference to Russell's prior behavior issues, are not sufficient to sustain a finding of irremediable conduct. The Board had no justification to seek dismissal of Russell because it did not give her proper written warning that her remedial behavior would lead to termination.

The order of the trial court affirming the decision of the Board of Education of the City of Chicago is reversed. The trial court is instructed to order the defendants to reinstate Russell as a tenured teacher at the Curtis School. This cause is remanded for a determination of the Board's liability to Russell for back pay, restoration of sick days, and all other benefits, rights and privileges she would have received had she remained on the job, consistent with this opinion. The Board's

17

petition for rehearing is denied.

Reversed and remanded, with instructions.

CAHILL, P.J., and GARCIA J., concur.

**Please use the]**
**following form:]**

|  |  |
|---|---|
| | ] LUCILLE RUSSELL, |
| | ] |
| | ]          Plaintiff-Appellant, |
| | ]    v. |
| | ] |
| | ] THE BOARD OF EDUCATION OF THE CITY OF |
| | ] CHICAGO, MICHAEL W. SCOTT, NORMAN R. |
| | ] BOBINS, TARIQ H. BUTT, ALBERTO A. |
| | ] CARRERO, JR., CLARE M. MUNANA, ROXANNE |
| | ] WARD, RUFUS WILLIAMS, ARNE DUNCAN, |
| | ] Chief Executive Officer, ROBERT PERKOVICH, and |
| | ] ILLINOIS STATE BOARD OF EDUCATION, |
| | ] |
| | ]          Defendants-Appellees. |

**Complete** ]
  **TITLE** ]
**of Case.** ]

---

**Docket No.** ]        No. 1-06-1134
**COURT** ]    Appellate Court of Illinois
           ]   First District, First Division
**MODIFIED** ]
**OPINION ON** ]
**DENIAL OF** ]
**REHEARING** ]        MARCH 03, 2008
**Opinion Filed** ]     (Month, Day and Year)

---

**JUSTICES** ] JUSTICE ROBERT E. GORDON delivered the opinion
             ] of the court.
             ]
             ] CAHILL, P.J., and GARCIA, J., concur.

---

**APPEAL from the]** Lower Court and Trial Judge(s) in form indicated
**Circuit Court** ] in margin:
**of Cook County;]** Appeal from the Circuit Court of Cook County.
**the Hon:_____** ]
**Judge Presiding]** Honorable Richard Billik, Judge Presiding.

---

**For APPELLANTS** ]Indicate if attorney represents APPELLANTS or
**John Doe of** ]APPELLEES and include attorneys of counsel.
**Chicago.** ]Indicate the word NONE if not represented.
**For APPELLEES,** ]_____
**Smith and** ]    The Law Offices of Christopher Kruger
**Smith, of** ]    Evanston, Illinois    60201
**Chicago.** ]    Attorneys for Appellant
**Brown,** ]    Attn: Christopher Kruger
**of Counsel.** ]      OF COUNSEL
             ]
             ]    Patrick J. Rocks, General Counsel
             ]    Board of Education of the City of Chicago
             ]    Chicago, Illinois    60603
             ]    Attorneys for Appellees

```
                    ]     Attn: Lee Ann Lowder
Also add atty. ]              OF COUNSEL
for third party]
appellants     ]
or appellees.  ]
_____(USE REVERSE SIDE IF NEEDED_____
```