**2022 IL 126256**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126256)

*In re* CRAIG H. (The People of the State of Illinois, Appellee,
v. Craig H., Appellant).

*Opinion filed September 22, 2022.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Theis, Neville, Michael J. Burke, and Overstreet concurred in the judgment and opinion.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1      In this appeal, we determine whether respondent, Craig H., was properly subjected to involuntary administration of psychotropic medication under section 2-107.1 of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/2-107.1 (West 2018)). Respondent argues that the Sangamon

County circuit court's order permitting involuntary administration of medication violated his right to make health care decisions through the agent he appointed under the Powers of Attorney for Health Care Law (Powers of Attorney Law) (755 ILCS 45/4-1 *et seq.* (West 2018)). For the reasons that follow, we hold that the trial court's involuntary medication order was valid under the applicable statutory provisions. Accordingly, we affirm the appellate court's judgment that affirmed the trial court's order for involuntary treatment.

¶ 2                                    I. BACKGROUND

¶ 3        In 2013, respondent executed an Illinois statutory short form power of attorney for health care (755 ILCS 45/4-10 (West 2012)), appointing his mother, Teresa H., as his agent. At that time, respondent was 49 years old, and he had been diagnosed with a mental illness for about 24 years. He had taken psychotropic medications over the years to treat his mental illness.

¶ 4        In November 2016, respondent was hospitalized at McFarland Mental Health Center (McFarland) after he was charged with burglary in La Salle County and found unfit to stand trial. In November 2018, Dr. Aura Eberhardt, a psychiatrist at McFarland, filed a petition seeking to involuntarily administer psychotropic medications to respondent under section 2-107.1 of the Mental Health Code (405 ILCS 5/2-107.1 (West 2018)). A copy of respondent's power of attorney for health care was attached to the petition.

¶ 5        Respondent filed a section 2-619 motion under the Code of Civil Procedure to dismiss the petition for involuntary treatment (735 ILCS 5/2-619 (West 2018)), asserting that he had executed a valid power of attorney for health care and that his agent disagreed with, and refused to consent to, administration of the proposed medications. Respondent alleged that the trial court lacked authority to order involuntary treatment under the Mental Health Code because the decision on medical treatment rested with his agent. Following a hearing, the trial court denied respondent's motion to dismiss and set the matter for a hearing on the petition for involuntary treatment.

¶ 6        At the hearing on the petition, Dr. Eberhardt testified that respondent was diagnosed with schizoaffective disorder, bipolar type, when he was 25 years old.

Respondent was currently 54 years old, and he had been experiencing hallucinations with symptoms of paranoia, inability to sleep, poor impulse control, hypersexuality, physical aggression, and psychomotor agitation. Dr. Eberhardt stated that "[a]s examples, he's pacing when—the entire time when he is awake. As far as hypersexuality, I have examples where [respondent] approached female peers and female staff, trying to kiss them, trying to sniff them, standing in their door while they were sleeping at night."

¶ 7 Dr. Eberhardt testified that respondent had no understanding or insight into his mental illness and that he lacked capacity to make rational decisions on his treatment. Respondent's mental illness had "an element of cycling," where "[t]here are times when symptoms get worse." Since late June 2018, respondent's ability to function had deteriorated. He would not sleep for days, followed by periods when he slept continuously and missed meals. She testified that respondent had begun collecting urine in cups in his room and he required prompts to shower and eat meals. Respondent also became aggressive with his roommate and hit another individual after he intervened. That individual had to be taken to a hospital emergency room for medical treatment.

¶ 8 In September 2018, respondent "shoved a peer to the ground" and made numerous threats to kill or harm people, including staff at McFarland. Respondent had also engaged in other aggressive and inappropriate behavior, including threatening a staff member with a coffee pitcher, digging through trash, urinating on floors, and writing on walls. Respondent had received emergency forced medications at least 10 times in the previous 5 months.

¶ 9 Dr. Eberhardt requested treatment with risperidone, lithium, lorazepam, and benztropine. She listed several alternatives to those medications and testified about the benefits and possible side effects of the medications. She testified that respondent had been treated with all of the medications in the past and that his symptoms had improved, allowing him to live in nursing homes for a couple years. She opined that the benefits of the medications outweighed any potential risk of adverse side effects. Without treatment, respondent was aggressive and hypersexual and would be unable to live anywhere other than a hospital. With the medications, Dr. Eberhardt expected respondent's symptoms to improve, and he

could possibly regain capacity and eventually live in a nursing home. Dr. Eberhardt concluded that respondent's condition would not improve without medication.

¶ 10        Dr. Eberhardt further testified that respondent's 82-year-old mother, Teresa H., was his agent under his health care power of attorney. Dr. Eberhardt gave Teresa H. the written information on the risks, benefits, and potential side effects of the requested medications and on alternative medications. Teresa H. understood the proposed treatment plan, but she declined to consent to treatment with the medications. According to Dr. Eberhardt, Teresa H. "would not consent for any type of medications." Dr. Eberhardt testified that Teresa H. had repeatedly stopped respondent's medications in the past, believing that they caused brain damage, made respondent "like a zombie," and made him look "like a man without a head."

¶ 11        Dr. Eberhardt acknowledged that treatment alternatives may be used when a person refuses medication. Those alternatives include seclusion, restraints, one-on-one monitoring, and emergency forced medication, but Dr. Eberhardt testified that some of those treatment alternatives are a last resort. Based on the evidence, the trial court granted the petition for involuntary administration of psychotropic medication. The trial court's order was dated December 28, 2018, and it was effective for a period not to exceed 90 days.

¶ 12        On appeal, respondent again argued that the trial court's order violated his right to appoint an agent to make his health care decisions under the Powers of Attorney Law. The appellate court initially found that the appeal was moot because the involuntary administration order expired 90 days after it was entered, but the appellate court determined that this case was subject to review under both the public interest exception to mootness and the exception for issues capable of repetition yet evading review. 2020 IL App (4th) 190061, ¶¶ 24-30.

¶ 13        On the merits, the appellate court observed that section 2-102(a-5) of the Mental Health Code provides, in pertinent part, that

"'[i]f the recipient lacks the capacity to make a reasoned decision about the treatment, the treatment may be administered only (i) pursuant to the provisions of Section 2-107 or 2-107.1 or (ii) pursuant to a power of attorney for health care under the Powers of Attorney for Health Care Law or a declaration for

- 4 -

mental health treatment under the Mental Health Treatment Preference Declaration Act.' " *Id.* ¶ 37 (quoting 405 ILCS 5/2-102(a-5) (West 2018)).

Section 2-107.1(a-5)(1) provides that, if a power of attorney for health care exists and is available to the petitioner, "the instrument or a copy of the instrument shall be attached to the petition [for involuntary treatment] as an exhibit." 405 ILCS 5/2-107.1(a-5)(1) (West 2018). The statute also requires providing a copy of the petition to " 'any known agent or attorney-in-fact.' " 2020 IL App (4th) 190061, ¶ 37 (quoting 405 ILCS 5/2-107.1(a-5)(1) (West 2018)).

¶ 14        Based on those statutory provisions, the appellate court held that the existence of a power of attorney does not preclude the State from filing a petition for involuntary administration of psychotropic medication, reasoning that "[t]he use of the disjunctive 'or' [in section 2-102(a-5)] indicates involuntary medication can be administered either under a section 2-107.1 petition *or* when authorized by a power of attorney." (Emphasis in original.) *Id.* ¶ 38. The appellate court concluded that "[n]othing in the plain language indicates the decision by a power of attorney precludes the filing of a section 2-107.1 petition." *Id.*

¶ 15        While the Powers of Attorney Law allows appointment of an agent with broad authority to make health care decisions for another person, the appellate court determined that the Mental Health Code applies more specifically to this case. *Id.* ¶¶ 44-46. The State has both a *parens patriae* interest in providing for people suffering from mental illness and a penological interest in restoring respondent to fitness to stand trial. *Id.* ¶ 45. Accordingly, the appellate court affirmed the trial court's order for involuntary treatment. *Id.* ¶ 46.

¶ 16        We allowed respondent's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Oct. 1, 2020)). We also allowed Rebecca J. O'Neill, clinical law professor in the Civil Practice Legal Clinic for the Elderly at Southern Illinois University School of Law, to file an *amicus curiae* brief (Ill. S. Ct. R. 345 (eff. Sept. 20, 2010)).

## II. ANALYSIS

### A. Mootness

Initially, as the appellate court observed, this appeal is moot. The 90-day involuntary treatment order entered by the trial court on December 28, 2018, expired long ago. Thus, it is impossible for a court of review to grant effective relief from that order. See *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003) (an appeal is moot when intervening events have made it impossible for a reviewing court to grant effectual relief).

The parties agree, however, that this case is subject to review under both the mootness exception for issues capable of repetition yet evading review and the public interest exception to mootness. The exception for issues capable of repetition yet evading review has two elements: (1) the challenged action must be too short in duration to be fully litigated before its end, and (2) there must be a reasonable expectation that the complaining party will be subject to the same action again. *In re Julie M.*, 2021 IL 125768, ¶ 22 (citing *In re Benny M.*, 2017 IL 120133, ¶¶ 19-20).

In this case, the first element of the exception for issues capable of repetition yet evading review has been met because the 90-day duration of the involuntary treatment order was too brief to allow appellate review. See *In re Alfred H.H.*, 233 Ill. 2d 345, 358 (2009). On the second element, respondent's history establishes a reasonable expectation that he will be subject to a petition for involuntary treatment in the future. Respondent has suffered from schizoaffective disorder, bipolar type, for more than 29 years. His mental illness has "an element of cycling," where symptoms get worse at times. Dr. Eberhardt testified that respondent has been treated previously with the psychotropic medications she requested in this case and that his condition would not improve without treatment with those medications. Respondent, however, has appointed his mother, Teresa H., as his health care agent, and she has consistently refused treatment with those medications. Dr. Eberhardt's testimony indicates that Teresa H. is adamantly opposed to treatment with psychotropic medications and that she would not consent to administration of any medications to respondent. The record, therefore, indicates that the legal issue presented in this case can reasonably be expected to recur in a future involuntary treatment proceeding involving respondent. Accordingly, we conclude that both

elements of the mootness exception for issues capable of repetition yet evading review have been met in this case.

¶ 22                     B. Petition for Involuntary Medication

¶ 23      Respondent contends that his health care agent's decision to refuse psychotropic medications should control in this case. A person with mental illness has a protected liberty interest to refuse psychotropic medications, and the Powers of Attorney Law allows a principal to appoint a trusted agent to make health care decisions in the event of the principal's loss of capacity. The Powers of Attorney Law states that the right to appoint an agent "cannot be fully effective unless the principal may empower the agent to act throughout the principal's lifetime, including during periods of disability, and have confidence that third parties will honor the agent's authority at all times." 755 ILCS 45/2-1 (West 2018). An agent's decision under a valid, unrevoked power of attorney for health care is considered the principal's competent decision, and a court may not interfere with the agent's decision unless the power of attorney is first revoked or limited. Respondent, therefore, concludes that the trial court erred in denying his motion to dismiss the State's petition seeking involuntary treatment because he gave his health care agent decision-making authority without limitation and his agent decided to decline treatment with the requested medications.

¶ 24      The State responds that the existence of a health care power of attorney does not preclude it from filing a petition seeking involuntary administration of medication under the Mental Health Code. The Mental Health Code provides, in pertinent part, that when a patient lacks capacity to make a decision about administration of psychotropic medications, the treatment may be administered either pursuant to section 2-107.1 or under the authority of a health care agent. The disjunctive "or" indicates two independent alternatives. The State further observes that the Mental Health Code requires attachment of an existing power of attorney to a section 2-107.1 petition, but it does not provide that the existence of a power of attorney requires dismissal of the petition. The State contends that construing section 2-107.1 to require dismissal of a petition if a respondent has a valid health care power of attorney would read into the statute a requirement that the legislature did not express. The State concludes that the relevant provisions of the Mental

- 7 -

Health Code are consistent with the Powers of Attorney Law. In the event of a conflict between the statutory provisions, however, the Mental Health Code controls as the more specific and more recently enacted statute.

¶ 25    This case presents a question of statutory construction subject to *de novo* review. *Palos Community Hospital v. Humana Insurance Co.*, 2021 IL 126008, ¶ 24. The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature. *International Ass'n of Fire Fighters, Local 50 v. City of Peoria*, 2022 IL 127040, ¶ 12. The best evidence of legislative intent is the language used in the statute, given its plain and ordinary meaning. *Id.* In construing a statute, courts may also consider the reason for the law, the problems to be addressed, and the consequences of construing the statute one way or another. *Haage v. Zavala*, 2021 IL 125918, ¶ 44. When the statutory language is clear and unambiguous, it must be construed as written, without reading in exceptions, conditions, or limitations not expressed by the legislature. *Elam v. Municipal Officers Electoral Board for the Village of Riverdale*, 2021 IL 127080, ¶ 14.

¶ 26    We presume that statutes relating to the same subject are governed by a single spirit and policy and that they are intended to be consistent and harmonious. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 37. Therefore, even when statutes appear to conflict, they must be construed in harmony if reasonably possible. *Id.* When statutes covering the same subject conflict, more recently enacted statutes control over earlier ones, and more specific statutes control over general statutes. *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶ 45.

¶ 27    In this case, the trial court granted the State's petition seeking involuntary treatment under section 2-107.1 of the Mental Health Code. The Mental Health Code requires recipients of services to be "provided with adequate and humane care and services in the least restrictive environment, pursuant to an individual services plan." 405 ILCS 5/2-102(a) (West 2018). Section 2-102 states, in pertinent part:

"If the services include the administration of electroconvulsive therapy or psychotropic medication, the physician or the physician's designee shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information

communicated. The physician shall determine and state in writing whether the recipient has the capacity to make a reasoned decision about the treatment. The physician or the physician's designee shall provide to the recipient's substitute decision maker, if any, the same written information that is required to be presented to the recipient in writing. If the recipient lacks the capacity to make a reasoned decision about the treatment, the treatment may be administered only (i) pursuant to the provisions of Section 2-107 or 2-107.1 or (ii) pursuant to a power of attorney for health care under the Powers of Attorney for Health Care Law or a declaration for mental health treatment under the Mental Health Treatment Preference Declaration Act." *Id.* § 2-102(a-5).

¶ 28    As it applies to this case, the plain language of the Mental Health Code establishes two alternatives for administration of psychotropic medications to respondent: (1) involuntarily under section 2-107.1 or (2) with the consent of respondent's health care agent appointed under the Powers of Attorney Law. *Id.* The use of the term "or" between those two courses of action indicates a legislative intent to establish independent alternatives. See *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 145 (2006) (the word "or," used in its ordinary sense, is disjunctive and connotes two separate alternatives). Thus, the plain language of the Mental Health Code indicates that involuntary treatment under section 2-107.1 is distinct from treatment with the consent of respondent's health care agent.

¶ 29    Section 2-107.1 provides for filing a petition for involuntary administration of psychotropic medication. 405 ILCS 5/2-107.1(a-5)(1) (West 2018). Under section 2-107.1, the petitioner must make a good-faith attempt to determine whether the recipient has executed a health care power of attorney pursuant to the Powers of Attorney Law. *Id.* If a health care power of attorney exists and is available to the petitioner, a copy of the instrument must be attached to the petition. *Id.* Additionally, section 2-107.1 requires that any known agent or attorney-in-fact must be given a copy of the petition and notice of the hearing. *Id.*

¶ 30    Section 2-107.1 refers to health care powers of attorney repeatedly, requires attachment of an existing and available power of attorney to the petition, and provides for notice of the proceeding to the health care agent. The Mental Health Code, therefore, plainly allows for filing a petition for involuntary treatment under section 2-107.1 when the individual has an existing health care power of attorney.

The requirement of attaching an available health care power of attorney to the petition would be nonsensical if the existence of the power of attorney required dismissal of the petition.

¶ 31    Additionally, the statutory requirements for granting a petition for involuntary treatment under section 2-107.1 do not include consent by the health care agent, if one exists. See *Id.* § 2-107.1(a-5)(4). The statutory requirements do not mention a decision by a health care agent at all. See *id.*

¶ 32    Given his agent's refusal of medications, respondent argues that the statutory requirements for granting a section 2-107.1 petition cannot be met in this case because the petitioner could not allege or prove the required lack of capacity element (*id.* § 2-107.1(a-5)(4)(E)). Respondent maintains that he had capacity to make a reasoned decision because his health care agent's refusal of the medications "inure[d] to [his] benefit *** as if [he] were competent and not a person with a disability." 755 ILCS 45/2-6(a) (West 2018). Respondent argues that his agent's decision "translates to a competent decision exercised on [his] behalf."

¶ 33    Section 2-107.1, however, only requires the petitioner to allege and prove that "the *recipient* lacks the capacity to make a reasoned decision about the treatment." (Emphasis added.) 405 ILCS 5/2-107.1(a-5)(4)(E) (West 2018). Respondent is the recipient in this case, and it is undisputed that he lacked capacity to make a reasoned decision about the proposed treatment. Section 2-107.1(a-5)(4)(E) does not refer to a health care agent's decision on behalf of the recipient, either consent or refusal, or require dismissal of a petition if the recipient has a valid health care power of attorney. Rather, the plain language of section 2-107.1(a-5)(4)(E) only requires proof that the recipient, Craig H., lacked capacity.

¶ 34    Notably, section 2-107.1 does not outline any consequence if a health care agent refuses treatment with psychotropic medications. Section 2-107.1 does not state that a petition should be dismissed if the recipient has executed a health care power of attorney or that a health care agent's refusal of psychotropic medications precludes granting a petition for involuntary administration under section 2-107.1. We believe the legislature would have expressly provided for that consequence if it had intended for the existence of a power of attorney or a refusal of treatment by a health care agent to require dismissal of a petition under section 2-107.1. We may

not add that requirement to the statute under the guise of statutory construction. See *Haage*, 2021 IL 125918, ¶ 60.

¶ 35 Our construction is further supported by section 2-107, addressing short-term emergency administration of psychotropic medications. Section 2-107 gives an adult recipient of services and the recipient's guardian or substitute decision maker the right to refuse psychotropic medications. 405 ILCS 5/2-107(a) (West 2018). Whenever emergency administration of psychotropic medications is refused by the recipient or his guardian or substitute decision maker, the physician must determine and state in writing whether the recipient meets the standard for longer-term involuntary administration under section 2-107.1. *Id.* § 2-107(h). If the physician determines that the recipient meets the standard under section 2-107.1, the facility director or designee must petition the court for administration of psychotropic medication under that section unless the facility director or designee states in writing why filing a petition is not warranted. *Id.*

¶ 36 The requirement in section 2-107 for filing a petition under section 2-107.1 would be meaningless if the trial court could not grant the petition over a substitute decision maker's refusal of psychotropic medications. Indeed, the refusal of psychotropic medications by the recipient, guardian, or substitute decision maker is precisely the circumstance that mandates filing a section 2-107.1 petition for involuntary administration. *Id.*

¶ 37 Thus, as applied to this case, the Mental Health Code provided two alternatives for administration of psychotropic medications when respondent lacked capacity to decide about the treatment. The medications could be administered either with the consent of respondent's health care agent or involuntarily under section 2-107.1. See *id.* § 2-102(a-5). The consent of respondent's health care agent was not required for the petitioner to obtain a trial court order allowing involuntary treatment under section 2-107.1. Under the plain language of the Mental Health Code, the existence of a power of attorney or the refusal of psychotropic medications by respondent's health care agent did not preclude the trial court from granting the section 2-107.1 petition allowing involuntary treatment.

¶ 38 Respondent, however, maintains that the Powers of Attorney Law controls here and that it precludes any order allowing involuntary treatment because his health care agent, appointed pursuant to a valid power of attorney, refused the requested

- 11 -

medications. Respondent insists that any decision on whether to allow treatment with the medications lies solely with his agent. Accordingly, respondent contends that the trial court should have granted his motion to dismiss the State's petition seeking involuntary treatment.

¶ 39    In support of his argument, respondent relies on the broad provisions of the Powers of Attorney Law. The Powers of Attorney Law contains a "purpose" provision stating, in pertinent part:

> "The General Assembly recognizes the right of the individual to control all aspects of his or her personal care and medical treatment, including the right to decline medical treatment or to direct that it be withdrawn, even if death ensues. ***
>
> However, if the individual becomes a person with a disability, her or his right to control treatment may be denied unless the individual, as principal, can delegate the decision making power to a trusted agent and be sure that the agent's power to make personal and health care decisions for the principal will be effective to the same extent as though made by the principal. ***
>
> *** [T]he General Assembly recognizes that powers concerning life and death and the other issues involved in health care agencies are more sensitive than property matters and that particular rules and forms are necessary for health care agencies to insure their validity and efficacy and to protect health care providers so that they will honor the authority of the agent at all times." 755 ILCS 45/4-1 (West 2018).

¶ 40    When a health care provider believes that a patient may lack capacity to provide informed consent to necessary health care, the provider must consult with any known and available health care agent who then has the power to act for the patient under the health care agency. *Id.* § 4-7(a). The Powers of Attorney Law provides a "short form power of attorney for health care" that may be used by a principal to grant the powers prescribed in the statute. *Id.* § 4-10(a). The statutory short form power of attorney provides the health care agent broad authority to make health care decisions for the principal, subject to any limitations appearing on the face of the form. *Id.* § 4-10(c). The statutory power of attorney generally authorizes the agent to

"give consent to and authorize or refuse, or to withhold or withdraw consent to, any and all types of medical care, treatment or procedures relating to the physical or mental health of the principal, including any medication program, surgical procedures, life-sustaining treatment or provision of food and fluids for the principal." *Id.* § 4-10(c)(1).

¶ 41   In this case, respondent gave his health care agent broad authority to make his health care decisions. In accordance with the terms of the Powers of Attorney Law, respondent authorized his agent "to make any and all decisions" concerning his medical treatment and health care and "to require, withhold or withdraw any type of medical treatment or procedure, even though [his] death may ensue." The power of attorney, therefore, gave respondent's health care agent authority to decide whether to allow treatment with psychotropic medications. As explained above, the Mental Health Code also addresses treatment with psychotropic medications under the circumstances of this case.

¶ 42   Because the two statutes address the same subject, we presume that they are governed by a single spirit and policy and that the legislature intended them to be consistent. *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 37. Thus, we will construe the statutes in harmony if reasonably possible, even in the event of an apparent conflict. *Id.*

¶ 43   In this case, we believe the Mental Health Code and the Powers of Attorney Law may be reasonably construed in harmony. The Powers of Attorney Law is a very broad statute, intended to allow a principal to delegate to a trusted agent the power to make "any and all health care decisions on behalf of the principal." 755 ILCS 45/4-10(c) (West 2018); *id.* § 4-1. In contrast, the Mental Health Code provisions applicable to this case are narrow and apply only to the decision on whether to involuntarily treat a person with psychotropic medications for a limited time and in specific circumstances.

¶ 44   Although the provisions of both statutes apply here and may appear to conflict, we believe the Mental Health Code provisions can reasonably be construed as a narrow exception to the general authority of a health care agent appointed under the Powers of Attorney Law. Importantly, the provisions of the Mental Health Code indicate a legislative intent to give effect to the Powers of Attorney Law. The Mental Health Code repeatedly refers to a "substitute decision maker," defined, in

- 13 -

relevant part, as "a person who possesses the authority to make decisions under the [Powers of Attorney Law]." 405 ILCS 5/1-110.5 (West 2018). In various provisions, the Mental Health Code provides for notice to a substitute decision maker. See *id.* §§ 2-200(a), (d), 2-201(a)(5). Relevant to this case, section 2-102(a-5) provides for treatment either by agreement of a health care agent or involuntarily under section 2-107.1. *Id.* § 2-102(a-5). Section 2-107.1 requires attachment of an existing and available power of attorney to a petition and requires notice of the proceeding to the health care agent. *Id.* § 2-107.1(a-5)(1).

¶ 45        The legislature, therefore, considered and accounted for the potential for a recipient of services to have a health care power of attorney. The Mental Health Code gives effect to the role of the health care agent by allowing administration of psychotropic medications either with the agent's consent or through court proceedings with notice to the agent and an opportunity for the agent to be heard. *Id.* §§ 2-102(a-5), 2-107.1(a-5)(1). This court has held that the wishes expressed by a recipient while competent are often highly relevant to the determination of whether psychotropic medications should be administered under section 2-107.1. *In re C.E.*, 161 Ill. 2d 200, 220-23 (1994). By requiring notice to the health care agent, the Mental Health Code facilitates participation by the agent, including obtaining evidence on the recipient's wishes while competent and any other relevant evidence. As applied to this case, we conclude that the provisions of the Mental Health Code demonstrate a legislative intent to carve out a narrow exception to the general applicability of a power of attorney for health care.

¶ 46        We further note that, even if the statutes could not be construed in harmony, we would still conclude that the Mental Health Code applies here. A "fundamental rule of statutory construction" provides that, when a general statutory provision and a specific statutory provision, either in the same or in another act, relate to the same subject, the specific provision controls and should be applied. *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002). The Mental Health Code addresses involuntary treatment with psychotropic medications specifically and accounts for when a recipient has an existing power of attorney for health care. The Powers of Attorney Law generally provides for appointment of a health care agent to "make any and all health care decisions on behalf of the principal." 755 ILCS 45/4-10(c) (West 2018). The Mental Health Code is the more specific provision and must be applied in the event of a conflict in the statutory provisions.

¶ 47    On this point, respondent notes that the Powers of Attorney Law contains a "supremacy clause," stating "[t]his Article supersedes all other Illinois Acts or parts thereof existing on the effective date of this Article to the extent such other Acts are inconsistent with the terms and operation of this Article." *Id.* § 4-11. Even if the relevant provisions of the Mental Health Code and the Powers of Attorney Law were inconsistent, the supremacy provision in section 4-11 would not apply here because the Mental Health Code provisions were enacted more recently. The Powers of Attorney Law became effective in 1987 (see Pub. Act 85-701 (eff. Sept. 22, 1987)), while the relevant provisions of the Mental Health Code became effective in 1997 (see Pub. Act 90-538 (eff. Dec. 1, 1997)). Section 4-11 states the Powers of Attorney Law only supersedes statutes in existence on its effective date. 755 ILCS 45/4-11 (West 2018).

¶ 48    Based on our construction, we also necessarily reject respondent's argument that section 2-10(b) of the Powers of Attorney Law (*id.* § 2-10(b)) provides the only procedure for limiting or revoking a power of attorney. As we have held, the Mental Health Code provides a narrow exception to the authority of a health care agent appointed under the Powers of Attorney Law. The Mental Health Code itself limits the authority of a health care agent in the specific circumstances presented by this case. Thus, the State was not required to attempt to revoke respondent's health care power of attorney under section 2-10(b) because the Mental Health Code provides a specific exception to the health care agent's authority.

¶ 49    In sum, we conclude that section 2-107.1 of the Mental Health Code provides a narrow exception to a health care agent's authority to make health care decisions for a principal under the Powers of Attorney Law. Section 2-107.1 provides strict standards that must be established by clear and convincing evidence before involuntary treatment may be allowed, including findings that the benefits of the medication outweigh potential harm and that less restrictive services have been considered and found inappropriate. 405 ILCS 5/2-107.1(a-5)(4) (West 2018); see also *In re C.E.*, 161 Ill. 2d at 218-19. Initial orders issued under section 2-107.1 are effective for no more than 90 days. 405 ILCS 5/2-107.1(a-5)(5). The statutory provisions demonstrate a clear legislative intent to allow the narrow relief provided by section 2-107.1 if the standards of that section are met, even over the objection of a health care agent appointed under the Powers of Attorney Law. Based on our construction of the statutory provisions relevant to this appeal, we conclude that the

trial court did not err in entering the order for involuntary administration of psychotropic medications in this case.

¶ 50                                III. CONCLUSION

¶ 51    For the reasons stated above, we affirm the appellate court's judgment, which affirmed the trial court's order allowing involuntary treatment in this case.

¶ 52    Judgments affirmed.


¶ 53    JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.