NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230533-U

NO. 4-23-0533

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 2, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| GREGORY V. HERTZ JR., | ) | Petition for Review of an |
|     Petitioner, | ) | Order of the Human Rights |
|     v. | ) | Commission |
| ILLINOIS HUMAN RIGHTS COMMISSION and THE | ) | |
| ILLINOIS NATIONAL GUARD, | ) | No. 20-0021 |
|     Respondents. | ) | |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court confirmed, finding the provision of the Illinois Human Rights
Act (775 ILCS 5/1-101 *et seq.* (West 2020)) protecting military status did not
provide protections in addition to the Uniformed Services Employment and
Reemployment Rights Act of 1994 (38 U.S.C. §§ 4301-4335 (2018)).

¶ 2    On January 17, 2020, petitioner, Gregory V. Hertz Jr., filed a complaint for a civil

rights violation against respondent, the Illinois National Guard (Illinois Guard), with the Illinois

Human Rights Commission (Commission) pursuant to the Illinois Human Rights Act (Act). 775

ILCS 5/1-101 *et seq.* (West 2020). On May 16, 2023, the Commission entered an order granting

the Illinois Guard's motion for a summary decision and dismissing petitioner's complaint with

prejudice. On appeal, petitioner argues the Commission erroneously found (1) the Act did not

apply to his claim and (2) he could not recover monetary damages from the Illinois Guard or

obtain reinstatement through his claim under the Act. We confirm the Commission's decision.

¶ 3                           I. BACKGROUND

¶ 4    Petitioner began working for the Illinois Guard in December 2006. He worked as a "Dual Status Technician," which is a federally funded civilian position. On June 3, 2016, petitioner filed a request with the Illinois adjutant general to perform service with the National Guard Bureau in Virginia. At the time of the request, petitioner had accumulated more than three years of prior active-duty military service. Petitioner's request to perform service with the National Guard Bureau in Virginia was approved through September 30, 2017. He was released from the Illinois Guard to report to active duty on July 18, 2016.

¶ 5    In May 2017, petitioner spoke with Joseph Schweickert, chief of staff for the Illinois Guard and advisor to the Illinois adjutant general. Petitioner told Schweickert he wanted to extend his tour of duty to the following year. However, he advised he would attempt to curtail any extended tour by February 2018, so he could return to employment with the Illinois Guard by March 2018 and not lose his restoration rights with the Illinois Guard under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) (38 U.S.C. §§ 4301-4335 (2018)). On July 17, 2017, petitioner e-mailed Schweickert to inform him the National Guard Bureau in Virginia had granted his request to extend his tour of active duty. In his e-mail to Schweickert, petitioner wrote:

> "As discussed previously, I will curtail as we approach the 5-year restoration date. Illinois has provided me a stated date for restoration. I will work that from my end with the understanding that i[f] I exceed the 5-year period, I will forfeit my restoration rights."

¶ 6    In September 2017, petitioner's active-duty tour was ordered to be served from October 1, 2017, to September 30, 2018. The Illinois adjutant general granted petitioner's continued release to serve said active duty. In January 2018, petitioner sought to curtail his

active-duty tour through his National Guard Bureau in Virginia supervisor, Lieutenant Colonel R. Dustin Hoadley. Hoadley did not recommend the curtailment of petitioner's active-duty tour, citing manpower shortages.

¶ 7          On March 14, 2018, Captain Jennifer Weitekamp, an employee relations specialist for the Illinois Guard, e-mailed petitioner to inform him that his five years of restoration rights protected under USERRA would expire on March 18, 2018. Weitekamp informed petitioner that he had 90 days, or until June 16, 2018, to restore his civilian position with the Illinois Guard. Included in the e-mail was a memorandum from Colonel Kevin Mulcahy, a human resources officer, explaining that effective June 17, 2018, petitioner would be "terminated *** due to failure [to] restore back to technician duty prior to the expiration of [petitioner's] restoration rights."

¶ 8          On May 18, 2018, petitioner again sought curtailment from his active-duty tour through Colonel Todd Wolford of the National Guard Bureau in Virginia. Petitioner's request was again denied due to manpower shortages. On June 17, 2018, the Illinois Guard terminated petitioner's employment and stated the reason for termination as "five years of restoration rights under USERRA [had] expired 18 March 2018. 90 days was allowed for restoration which expired on 16 June 2018." Petitioner's termination was "coded" as a voluntary abandonment of his position. Petitioner completed his active-duty obligations with the National Guard Bureau in Virginia.

¶ 9          On October 18, 2018, petitioner filed a charge of discrimination with the Illinois Department of Human Rights (Department) against the Illinois Guard, alleging unlawful discrimination under the Act based on his military status. On October 1, 2018, the Department issued a notice of substantial evidence that a civil rights violation had been committed. On

January 17, 2020, petitioner filed a complaint of civil rights violation with the Commission. On June 1, 2021, both parties filed motions for a summary decision.

¶ 10        On September 9, 2022, the administration law judge (ALJ) filed a recommended order and decision. The ALJ found the Military Code of Illinois conformed "to all Acts and regulations of the United States affecting the same subjects, and all Acts of the State of Illinois shall be construed to effect this purpose." See 20 ILCS 1805/4 (West 2020). Furthermore, the Illinois Guard was "organized, equipped, disciplined and governed in conformity with the laws of the United States and the rules, regulations and tables based thereon." *Id.* § 29. Therefore, the Illinois Guard's termination of petitioner followed the "dictates of USERRA."

¶ 11        The ALJ concluded two statutes covered the subject matter at issue in petitioner's complaint: (1) the "Illinois National Guard Employment Right Law" within the Military Code of Illinois and (2) the Act. The ALJ found the Military Code of Illinois to be the more specific, and thus applicable, statute. Because the Act did not cover the conduct alleged by petitioner, the Commission lacked jurisdiction over petitioner's claims. The ALJ summarized his findings as follows:

> "In summary, [petitioner] loses his case because: (1) at the time of his termination in June of 2018, two Illinois statutes potentially covered [petitioner's] employment relationship with [the Illinois Guard]; (2) the [Act] does not apply to the instant dispute because the Illinois National Guard Employment Rights Law, which covers restoration rights for members of the Illinois National Guard, was the more specific statute; and (3) the instant dispute essentially arises out of [the Illinois Guard's] application of the federal USERRA statute, which is outside the Commission's jurisdiction to resolve. Alternatively, the distinctive military nature

of [petitioner's] technician position with [the Illinois Guard], as recognized by caselaw, precludes him from obtaining a monetary remedy arising out of actions taken by a superior officer in the Illinois National Guard. Moreover, [petitioner's] claim for any injunctive relief, including his reinstatement to a position with [the Illinois Guard], is also non-justiciable, where review by the Commission of the Adjutant General's termination of [petitioner] had the potential to either undermine military discipline and decision-making or, in this case, impair [the Illinois Guard's] training programs and operational readiness."

¶ 12    The ALJ recommended petitioner's motion for a summary decision be denied, the Illinois Guard's motion for a summary decision be granted, and petitioner's complaint and underlying charge of discrimination be dismissed with prejudice. On May 16, 2023, the Commission entered an order declining to further review petitioner's exceptions to the ALJ's recommended order and decision. The Commission adopted the ALJ's recommended order and decision from September 9, 2022, as the order of the Commission.

¶ 13    This appeal followed.

¶ 14                            II. ANALYSIS

¶ 15    On appeal, petitioner argues the Commission erred when it adopted the ALJ's recommended order and decision because it erroneously found (1) the Act did not apply to his claim and (2) he could not recover monetary damages from the Illinois Guard or obtain reinstatement through his claim under the Act.

¶ 16    Petitioner contends the Commission's decision does not account for how USERRA permits other laws, such as the Act, to establish employment rights and benefits in addition to what is provided by USERRA. He argues the Act provides that an employer violates

an employee's civil rights by terminating an employee "on the basis of unlawful discrimination." 775 ILCS 5/2-102(A) (West 2020). "Unlawful discrimination" includes the discrimination against any employee based on "military status," (*id.* § 1-103(Q)) which is further defined to include an employee's active-duty military status. See *id.* § 1-103(J-1).

¶ 17 Petitioner cites several cases to support his argument: *Reyes v. Goya of Puerto Rico, Inc.*, 632 F. Supp. 2d 142, 145 (D. Puerto Rico 2009) (finding USERRA does not preempt a state tort law cause of action); *Kane v. Town of Sandwich*, 123 F. Supp. 3d 147, 160 (D. Mass. 2015) (finding USERRA does not preempt a state law claim for discrimination based on military status); *Johnson v. Village of Rockton*, 2007 WL 5721337, *1 (N.D. Ill. 2007) (denying summary judgment where a state law cause of action did not "conflict with or limit in any way the protections afforded under USERRA"). From here, petitioner argues the Commission had jurisdiction to decide his claim under the Act because it did not conflict with USERRA, but, rather, it provided him with rights in addition to USERRA.

¶ 18 A. Jurisdiction of the Commission

¶ 19 We begin by addressing whether the Commission had jurisdiction to decide petitioner's complaint. Our supreme court, in addressing the issue of jurisdiction for an administrative agency, explained:

> "An administrative agency has no general or common-law powers.
> [Citation.] The agency is limited to those powers granted to it by the legislature in
> its enabling statute. [Citation.] When the agency renders a decision that it is
> without statutory authority to make, it is without jurisdiction, and the decision is
> void. [Citation.]" *Prate Roofing & Installations, LLC v. Liberty Mutual Insurance
> Corp.*, 2022 IL 127140, ¶ 22.

¶ 20    Therefore, to resolve the question of the Commission's jurisdictional authority to resolve petitioner's claim, we must construe the Act. *Id.* ¶ 23. "The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning." *Id.* "The scope of powers conferred on an administrative agency by its enabling legislation is a question of statutory interpretation which we review *de novo*." *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 20.

¶ 21    The Commission's order points to a conflict between the Act and the Military Code of Illinois and concludes the more specific statute, the Military Code of Illinois, is controlling. It is true where two statutes covering the same subject conflict, the more specific statute controls over the more generalized statute. *In re Craig H.*, 2022 IL 126256, ¶ 26. However, "even when statutes appear to conflict, they must be construed in harmony if reasonably possible." *Id.*

¶ 22    In this case, we do not find a conflict between the Act and the Military Code of Illinois. More specifically, the Commission references the "Illinois National Guard Employment Rights Law" (20 ILCS 1805/30.1 *et seq.* (West 2016)), which is the National Guard Supplemental Rights and was largely repealed by Public Act 100-1101, § 90-20 (eff. Jan. 1, 2019). Prior to its repeal, the National Guard Supplemental Rights provided members of the national guard "whose absence from a position of employment necessitated by reason of being called to *State Active Duty*, whether or not voluntary, shall be entitled to reemployment rights and benefits and other employment benefits." (Emphasis added.) 20 ILCS 1805/30.15(a) (West 2016). We emphasize "State Active Duty" because the public policy provision from the since repealed statute also clarified USERRA "does not provide any such protection to members of the

National Guard serving the states, including the State of Illinois, in a State Active Duty status pursuant to orders of the Governor." *Id.* § 30.5. Thus, the National Guard Supplemental Rights statute in effect at the time petitioner filed his charge with the Department protected his reemployment rights when called to active-duty status for the Illinois Guard. Petitioner did not allege he was called to active duty for the Illinois National Guard; rather, he alleged he was called to active duty for the National Guard Bureau in Virginia. Therefore, the National Guard Supplemental Rights statute is inapplicable and not in conflict with the Act.

¶ 23      Indeed, petitioner's complaint alleges the Illinois Guard violated the Act when it terminated him on June 17, 2018, when he was on active-duty military status. This allegation is squarely within the confines of the Act that makes it an employment civil rights violation for any employer to "discharge" or otherwise terminate an employee "on the basis of unlawful discrimination." 775 ILCS 5/2-102(A) (West 2020). "Unlawful discrimination" is defined by the Act to mean "discrimination against a person because of his or her actual or perceived *** military status." *Id.* § 1-103(Q). Therefore, we conclude the Commission had jurisdiction to decide petitioner's claim.

¶ 24      Despite the Commission's finding it did not have jurisdiction over petitioner's claim, the Commission, nonetheless, concluded the National Guard Supplemental Rights statute applied in petitioner's case, granted the Illinois Guard's motion for a summary decision, and dismissed petitioner's claim with prejudice. Because we have found the Commission *had* jurisdiction to decide his claim, petitioner asks that we remand the matter for further proceedings. This court, on administrative review, may affirm an agency's decision on any basis appearing in the record. *Rainbow Apartments v. Illinois Property Tax Appeal Board*, 326 Ill. App. 3d 1105, 1109 (2001).

¶ 25                                    B. Applicable Law

¶ 26            Ordinarily, "Illinois courts have accepted the three-part analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for establishing discrimination claims." *Champaign-Urbana Public Health District v. Illinois Human Rights Comm'n*, 2022 IL App (4th) 200357, ¶ 183 (citing *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79 (1989)). However, the three-part analysis from *McDonnell* is largely a factual analysis, and, in the case *sub judice*, there are no factual disputes. The quintessential facts of this case involve (1) petitioner's active-duty military status with the National Guard Bureau of Virginia, (2) petitioner's failure or inability to return to his civilian position with the Illinois Guard within five years of accrued active-duty service, and (3) the Illinois Guard's decision to terminate petitioner because of (1) and (2). Furthermore, petitioner's arguments on appeal do not involve factual disputes, but pose a specific legal question; namely, does the Act's provision prohibiting termination based on military status provide additional protection to that of USERRA? We also note the Commission's order focuses entirely on questions of law.

¶ 27            The standard of review for an agency's summary decision is *de novo*. *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 536 (2000). The Illinois Administrative Code provides that summary decisions "shall be rendered without delay if the pleadings and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a recommended Order as a matter of law." 56 Ill. Adm. Code 5300.735(b) (2020). A " 'summary decision is the administrative agency procedural analogue to the motion for summary judgment in the Code of Civil Procedure.' " *Sola*, 316 Ill. App. 3d at 534 (quoting *Cano v. Village of Dolton*, 250 Ill. App. 3d 130, 138 (1993)). The similarity between a summary decision and a summary judgment makes it appropriate to employ caselaw pertaining to

summary judgments when reviewing an administrative agency's order on direct review. *Id.*; see also *Chicago White Sox, Ltd. v. State Automobile Mutual Insurance Co.*, 2023 IL App (1st) 230101, ¶ 20 (noting a reviewing court "may affirm on any basis appearing in the record, whether or not the circuit court relied on that basis or its reasoning was correct"). Therefore, we will review the legal question at issue in this case.

¶ 28                                     C. USERRA

¶ 29        USERRA does not "supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person" under USERRA. 38 U.S.C. § 4302(a). Rather, USERRA only preempts any state law that seeks to reduce, limit, or otherwise eliminate any rights or benefits it provides. 38 U.S.C. § 4302(b).

¶ 30        USERRA provides reemployment rights to persons who serve in the uniformed services. However, reemployment rights under USERRA are not absolute, but conditional:

>        "Subject to subsections (b), (c), and (d) and to section 4304, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if—
>
>              (1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written notice or verbal notice of such service to such person's employer;

(2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

(3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e)." 38 U.S.C. § 4312(a)(1)-(3).

¶ 31                                    D. This Case

¶ 32        The record suggests subsection (a)(1) of USERRA is not at issue. The ultimate issue in this case appears to be whether petitioner satisfied any of the conditions in subsections (a)(2) and (3) of section 4312 or whether any of the exceptions to those conditions were met as enumerated under subsections (c), (d), or (e) of section 4312 (see 38 U.S.C. § 4312 (c), (d), (e)). However, none of this was addressed by petitioner. Rather, he contends the Act's unlawful discrimination provisions protecting his active-duty military status are *in addition to* any rights and benefits provided under USERRA. But what specific rights and benefits in addition to USERRA petitioner is entitled to are never straightforwardly conveyed.

¶ 33        The doctrine of *in pari materia* provides where two statutes cover the same subject matter, they "will be considered with reference to one another to give them harmonious effect." *People v. McCarty*, 223 Ill. 2d 109, 133 (2006). Here, both the Act and USERRA cover employment protections for those called to active-duty service. However, *in pari materia* is of no use here because it is only applicable where the statute to be construed is ambiguous. See *People v. 1946 Buick, VIN 34423520*, 127 Ill. 2d 374, 377 (1989). The Act's provision protecting military status is clear and unambiguous. Rather, what is vague and unclear is petitioner's

- 11 -

argument as to how the Act's military status provision provides protections in addition to USERRA.

¶ 34    As the Commission's order correctly noted, the Military Code of Illinois states that "all Acts of the State of Illinois affecting the [Illinois Guard] *** is to conform to all Acts and regulations of the United States affecting the same subjects, and all Acts of the State of Illinois shall be construed to effect this purpose." 20 ILCS 1805/4 (West 2020). Additionally, "[t]he [Illinois Guard] shall be organized, equipped, disciplined and governed in conformity with the laws of the United States and the rules, regulations and tables based thereon." *Id.* § 29. The legislature has clearly expressed that Illinois law is to be construed harmoniously with federal law as it pertains to the Illinois Guard and its members. Therefore, a harmonious reading of the Act and USERRA would not permit the termination of an employee based on his or her military status so long as he or she complied with the reemployment guidelines set forth under USERRA. As we explained above, USERRA's protections are not absolute. Petitioner does not dispute his active-duty service time had exceeded five years, nor does he allege he complied with the application for reemployment as prescribed by USERRA. See 38 U.S.C. § 4312(a)(2), (3).

¶ 35    This alone supports confirming the Commission's order. The fact is, the Act does not explicitly authorize reemployment rights to active duty servicemembers beyond the five-year limitation provided by USERRA. As a reviewing court, we cannot "add provisions that are not found in a statute, nor may [we] depart from a statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express." *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010). The five-year limit under USERRA is enforceable. *Sutton v. City of Chesapeake*, 713 F. Supp. 2d 547, 555 (E.D. Virginia 2010) ("Plaintiff accrued more than five-years of active military service and therefore [was] not entitled

to reemployment" under USERRA.); see also *Champaign-Urbana Public Health District*, 2022 IL App (4th) 200357, ¶ 184 (permitting a reviewing court to examine federal caselaw when construing the Act).

¶ 36        Moreover, a reviewing court "should avoid interpretations that render a statute meaningless or that lead to absurd results." *Centrue Bank v. Voga*, 2020 IL App (2d) 190108, ¶ 39 (citing *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 363 (1986)). Petitioner's argument that the Act's provision protecting "military status" *simpliciter* affords him protections in addition to his protections under USERRA would lead this court to render a statutory interpretation that is both meaningless and absurd. First, it renders USERRA's cumulative five-year length of absence meaningless. This would not be a harmonious reading of USERRA and the Act. Second, suppose an employee embarked on active duty for 5 years and continued year after year to extend his active-duty status for the next 25 years. The employee is eventually terminated from his employment after five years of accrued service. Following petitioner's generalized interpretation of the Act as providing additional protections to USERRA to its logical conclusion, the employee has a right to reemployment, not under USERRA, but under the Act, 30 years later. This is an absurd result and an interpretation of the Act we decline to accept. Because we find petitioner has not demonstrated the Act's provision regarding military status provides employment protections beyond that of USERRA, we need not address his argument as to whether he can obtain monetary damages from the Illinois Guard or obtain reinstatement through his claim under the Act.

¶ 37                                III. CONCLUSION

¶ 38        For the reasons stated, we confirm the Commission's decision.

¶ 39        Confirmed.